No. 72,207

STATE OF KANSAS, *Appellee,* v. DENNIS J. WALLACE, *Appellant.*
(908 P.2d 1267)

Opinion filed December 8, 1995.

*Thomas Jacquinot,* special appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*John K. Bork,* assistant attorney general, argued the cause, and *JaLynn Copp,* assistant attorney general, and *Carla J. Stovall,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant entered an *Alford* plea to second-degree murder and aggravated robbery. Defendant filed a post-sentencing motion to withdraw his plea, claiming that he had not received the specific sentence promised and that he was not provided with effective assistance of counsel because his court-appointed attorney was acting as a special county attorney while defending

him. The sentencing judge refused to allow defendant to withdraw his plea. Defendant appeals the denial of the motion to withdraw plea.

Dennis Wallace was charged with first-degree murder, aggravated robbery, and aggravated kidnapping. Mark Ward was appointed to represent Wallace. Because of the death of the county attorney, a deputy attorney general represented the State during the later stages of the proceeding.

Wallace entered an *Alford* plea to reduced charges of second-degree murder and aggravated robbery on November 30, 1992, the day before trial was to commence. There was no written plea agreement. After the district judge accepted Wallace's plea, the State and defense counsel informed the judge that there was no agreement concerning the sentence to be imposed. Sentencing occurred on January 22, 1993. The State requested imposition of consecutive maximum sentences. Wallace received consecutive maximum sentences of 15 years to life for the offenses. Wallace filed a motion to modify his sentence 5 days later. The aggravated robbery sentence was modified downward to 10 to 20 years but remained consecutive to the 15 years to life sentence for second-degree murder.

Six months after the sentence was modified, Wallace filed a pro se motion to withdraw his plea. Following a hearing at which Wallace and his trial counsel testified, the judge denied Wallace's motion.

K.S.A. 22-3210(d) permits a trial court to set aside a judgment of conviction and allow a defendant to withdraw his or her plea after sentencing to correct manifest injustice. The decision of whether to grant or deny a motion to withdraw a plea lies within the sound discretion of the trial court, and the trial court's decision will not be disturbed on appeal absent a showing that the trial court abused that discretion. See *State v. McDaniel*, 255 Kan. 756, Syl. ¶ 4, 877 P.2d 961 (1994); *State v. Jackson*, 255 Kan. 455, Syl. ¶ 2, 874 P.2d 1138 (1994); *State v. Morris*, 254 Kan. 993, Syl. ¶ 2, 869 P.2d 739 (1994); *State v. Hill*, 247 Kan. 377, Syl. ¶ 2, 799 P.2d 997 (1990). One who asserts that the court abused its discretion bears

the burden of showing such abuse of discretion. *State v. Davis*, 256 Kan. 1, 26, 883 P.2d 735 (1994).

Wallace sets forth two arguments. First, he argues that his court-appointed counsel, Mark Ward, misled him as to the sentence the judge would impose. Second, Wallace complains that his Sixth Amendment right to effective assistance of counsel was violated because his appointed counsel had a conflict of interest because at the same time counsel was defending him for a Bourbon County crime, he was serving as a special prosecutor for Bourbon County. Wallace also asserts that where the fundamental constitutional right to effective counsel is violated, the trial court has no discretion and is required to allow a defendant to withdraw a plea.

We first address Wallace's argument that his defense counsel guaranteed him the district judge would impose a specific sentence. Wallace testified at the hearing on his motion to withdraw plea that his defense counsel, Ward, promised that he was to receive two 10- to 20-year sentences. According to Wallace, Ward informed him the judge had stated that if the press was present at Wallace's sentencing, the judge would impose a more severe sentence and later reduce the sentences when the motion for modification of Wallace's sentence was heard. Wallace also testified that he understood the State had agreed to stand mute as to the sentence to be imposed by the judge.

Ward denied he promised Wallace that he would receive two 10- to 20-year sentences or that the judge had agreed to impose a specific sentence at Wallace's sentencing or modification hearing. Ward insisted he explained to Wallace the range of penalties and that the sentencing judge had discretion in imposing the sentence.

The transcript of Wallace's plea hearing reveals that before accepting Wallace's plea, the judge informed Wallace of the range of penalties for each offense. Wallace acknowledged at that hearing that the judge was not bound by any agreement of counsel or recommendation concerning the sentence and that the sentence to be imposed would be up to the judge. Wallace also agreed that there would be no sentencing benefit by entering a plea rather than proceeding to trial. Finally, Wallace indicated to the judge that no threats or promises of leniency had been made to him.

At the hearing to set aside his plea, Wallace conceded that at the plea hearing he acknowledged the judge was not bound by any sentencing recommendation. Wallace claimed that even though the State and his counsel informed the judge at the plea hearing that there was no agreement as to the sentence to be imposed, he had been instructed to just stand there because his counsel had the deal worked out prior to the hearing. Wallace asserted that he did what his attorney told him to do but did not understand what was occurring at the plea hearing.

The judge found that no promises had been made to Wallace by the State or defense counsel. The judge concluded that Wallace's counsel had been effective and that no manifest injustice occurred that required setting aside Wallace's plea. We have previously stated that a mere inaccurate prediction by counsel of the sentence a defendant might receive does not constitute ineffective assistance of counsel. *State v. Solomon*, 257 Kan. 212, Syl. ¶ 7, 891 P.2d 407 (1995). Here, there is no evidence of a plea agreement or an inaccurate prediction as to the sentence to be imposed. Under the facts, the judge did not abuse his discretion in denying Wallace's motion to withdraw plea based on the sentence Wallace received.

To set aside a guilty plea because ineffective assistance of counsel has rendered the plea involuntary, the defendant must show that counsel's performance fell below the standard of reasonableness and that there is a reasonable probability that but for counsel's errors the defendant would not have pleaded guilty and would have insisted on going to trial. *Solomon*, 257 Kan. 212, Syl. ¶ 6. Wallace asserts that Ward's capacity as a special prosecutor created an inherent conflict of interest which violated Wallace's constitutional right to effective counsel and required withdrawal of his plea.

The Bourbon County attorney was killed during the pendency of Wallace's criminal case. Ward served as a special prosecutor in criminal cases when the county attorney had a conflict of interest, and he filed criminal cases for a week or so after the county attorney's death. Ward served as a special prosecutor for Bourbon County while representing Wallace in Bourbon County. Ward could not recall the number of cases he prosecuted when the county attorney had a conflict of interest. Ward testified that the

majority of the cases on which he was a special prosecutor were misdemeanors, and there may have been one felony case. Ward stated that acting as a special prosecutor in the other criminal cases did not interfere or conflict with his representation of Wallace and that he was prepared for Wallace's trial. He believed Wallace was aware he acted as a special prosecutor in other cases while defending Wallace.

Wallace testified he was not informed of Ward's status as a special prosecutor and would not have consented to the appointment of Ward as his defense counsel if he had been aware of the conflict. Wallace argues that whether or not he was aware of the conflict, Ward's status as a special prosecutor was an inherent conflict of interest which compromised Wallace's constitutional and statutory right to effective counsel. Wallace cites *Holloway v. Arkansas*, 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (1978), and *Cuyler v. Sullivan*, 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980), which are discussed later in this opinion. Wallace argues that as a special prosecutor and to maintain Ward's relationship with the county government, Ward's true sentiments were to insure that the client he was defending was convicted or entered a plea.

The State stresses that Wallace's defense counsel acted as a special prosecutor only on a limited basis. It argues that Ward was not a "part-time" county attorney working for or under the supervision of the county attorney when he defended persons charged with crimes. The State contends that under these circumstances, Ward was sufficiently removed from the prosecutor's office that there was no conflict of interest and that Ward's representation of Wallace was effective and did not violate Wallace's right to counsel. For authority, the State cites *State v. Rice*, 227 Kan. 416, 607 P.2d 489 (1980).

In *Rice*, the defendant was represented on state criminal charges by a court-appointed attorney whose law partner served as a part-time judge of the municipal court in the same city. The attorney sought to be relieved as defense counsel because of the possible conflict. The *Rice* court stated that ordinarily, a part-time judge or part-time city or county attorney or the law partner or associate of such public servant would not be precluded, on a basis of conflict

of interest, from representing defendants in criminal cases in other courts. However, such persons could not represent or be appointed to represent a defendant in the court in which the judge or part-time city or county attorney carries out his or her duties. The *Rice* court stated that the decision of whether a conflict of interest actually exists or whether the relationship of the defense counsel to the public servant creates a conflict of interest is to be determined by the judge and counsel on an individual basis. The *Rice* court found no actual conflict of interest or appearance of impropriety to preclude the representation in that case. 227 Kan. at 421-22.

In *Widener v. State*, 210 Kan. 234, 499 P.2d 1123 (1972), Widener pleaded guilty to two criminal offenses in the Cowley County District Court. Widener later filed a K.S.A. 60-1507 motion seeking to set aside his convictions due to ineffective assistance of counsel because his court-appointed attorney was also the probate judge in Cowley County. Widener did not claim that the quality of representation by the attorney/probate judge was deficient. The *Widener* court noted that a probate judge had no jurisdiction over or duties related to criminal cases. Moreover, there was no limitation on the practice of law in other courts by probate judges in that county except where the practice conflicted with the duties of their office or the interests of those having business before the probate court. The *Widener* court noted that in essence the defendant was claiming he was denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. It observed that in measuring the adequacy and effectiveness of appointed counsel provided for an accused as guaranteed by the Constitution, adequacy and effectiveness must be gauged by the actual representation afforded the accused. To be a denial of an accused's constitutional rights, it must clearly appear that the representation of the accused by his counsel was wholly ineffective and inadequate.

The *Widener* court observed that even though much has been cited concerning the judicial and professional ethics involved when a judge practices law, the issue before the court was not about judicial or professional ethics. It asserted that the constitutional issue raised was whether, under the circumstances, the defendant

had the effective assistance of counsel. The court noted that the record clearly indicated that appointed counsel represented the defendant diligently and effectively. The *Widener* court concluded that an accused is not denied the effective assistance of counsel guaranteed by the Constitution merely because the attorney appointed to represent the defendant also holds the office of probate judge. 210 Kan. at 236-37.

In *Rice,* the defendant was represented by the law partner of a municipal court judge in a court other than the municipal court. In *Widener*, the probate judge was practicing criminal law in a separate court. Here, Ward was defending Wallace in the court in which he also prosecuted other individuals. *Rice* and *Widener* are not dispositive of the issue in this case.

*Rice* was cited in *In re Lake*, 241 Kan. 351, 737 P.2d 40 (1987), a disciplinary proceeding. Lake, an attorney, was found to have violated the Code of Professional Responsibility by representing a client, Ms. Hamner, in civil and criminal matters while he also served as Jackson County attorney. Lake had represented Hamner in a divorce and he later entered into a business with her. Subsequently, criminal charges were filed against Hamner in Jackson County. Lake did not defend Hamner on those charges. While the criminal charges were pending in Jackson County, Lake defended Hamner on separate criminal charges in Shawnee County. In addition, Lake also represented a creditor in a civil lawsuit against Hamner. Hamner filed a complaint against her attorney.

Lake argued that he had not violated disciplinary rules by representing Hamner in the Shawnee County criminal action while she was being prosecuted by his office in Jackson County. The *Lake* court reviewed the rationale of *Rice* and observed that lawyers holding part-time positions as judges or prosecuting attorneys should not appear as counsel for defendants in criminal matters in the courts in which they have responsibility. It found, however, that they may be far enough removed that they can appear as counsel for criminal defendants in other courts in which they have no substantial responsibility without giving the appearance of impropriety and without creating a conflict of interest. 241 Kan. at 355. The *Lake* court concluded that Lake was not far enough removed and

had violated the Code because he was inextricably involved with the client in the business, a financial failure, which caused the criminal charges against the client. 241 Kan. at 355. See MRPC 1.7 (1994 Kan. Ct. R. Annot. 313) (conflict of interest).

The fact that a conflict of interest under either the Code of Professional Responsibility or the Model Rules of Professional Conduct may exist is not dispositive of whether a client had ineffective assistance of counsel in a criminal proceeding. In *Schoonover v. State*, 218 Kan. 377, Syl. ¶ 3, 543 P.2d 881 (1975), *cert. denied* 424 U.S. 944 (1976), which concerned a contingency fee contract in a criminal case, the court stated that unprofessional conduct by defense counsel which violates a disciplinary rule contained in the Code of Professional Responsibility does not constitute ineffective and inadequate counsel as a matter of law. It is simply one factor to be considered as a part of the totality of the circumstances in making a judicial determination as to whether an accused has been provided representation by effective counsel.

Two United States Supreme Court cases discuss the danger of joint representation of codefendants in a criminal case. In *Holloway v. Arkansas*, 435 U.S. 475, prior to the joint trial of three codefendants for robbery and rape, the court-appointed defense counsel who was providing joint representation for the codefendants moved for the appointment of separate counsel. The attorney claimed that because of confidential information received from the codefendants, he was confronted with the risk of representing conflicting interests and thus could not provide effective assistance for each of his clients. The trial court denied the motion, and the codefendants were convicted. On appeal, the Supreme Court of Arkansas affirmed.

On *certiorari*, the United States Supreme Court observed that requiring or permitting a single court-appointed attorney to represent codefendants is not per se violative of constitutional guarantees of effective assistance of counsel. In some cases multiple defendants can appropriately be represented by one attorney, and in some cases advantages may accrue from joint representation. 435 U.S. at 482. One such case is where a defendant in a criminal

proceeding waived his right to the assistance of an attorney unhindered by a conflict of interest. 435 U.S. at 483 n.5.

The *Holloway* court noted that where representations are made by a court-appointed defense counsel representing codefendants in a state criminal proceeding that his joint representation of the codefendants confronts him with the risk of representing conflicting interests and, in the absence of any dilatory practices by the defense counsel, the failure of a court to either appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interest is too remote to warrant separate counsel deprives the codefendants of the assistance of counsel under the Sixth Amendment. 435 U.S. at 484. It concluded that a court should grant a court-appointed defense counsel's request for the appointment of separate counsel for codefendants he is representing in a criminal proceeding based upon counsel's representations as an officer of the court regarding a conflict of interest since (1) an attorney representing codefendants is in the best position professionally and ethically to determine when conflicts of interests exist or will probably develop in the course of a trial; (2) defense attorneys have the obligation, upon discovering a conflict of interest, to advise the court at once of the problem; and (3) when attorneys, who are officers of the court, address a judge solemnly upon a matter before the court, their declarations are made virtually under oath. 435 U.S. at 485-86. The *Holloway* court reversed the defendant's conviction and remanded for further proceedings.

In *Cuyler v. Sullivan*, 446 U.S. 335, two privately retained lawyers represented three criminal defendants charged with first-degree murder. All the defendants were tried separately. The first defendant to come to trial was found guilty on the basis of circumstantial evidence after his defense counsel rested without presenting any evidence. The defendant and his lawyers had not objected to the multiple representation. The other two codefendants were subsequently acquitted. The first defendant eventually petitioned for collateral relief under state law alleging, among other claims, that he had been denied the effective assistance of counsel because his defense lawyers represented conflicting interests. The trial court denied relief. The Supreme Court of Pennsylvania affirmed

both the first defendant's original conviction and the denial of collateral relief. The court found that there was " 'no dual representation in the true sense of the term' " and that resting the defense without presenting evidence was a reasonable tactic which did not amount to a denial of the effective assistance of counsel. Eventually, the Third Circuit Court of Appeals granted habeas corpus relief, holding that resting at the close of the prosecution's case raised a possibility of conflict in violation of the right to counsel. 446 U.S. at 337-40.

On *certiorari*, the United States Supreme Court vacated and remanded. It stated that a defendant who fails to object to multiple representation is required to establish that an actual conflict of interest adversely affected the performance of counsel in order to demonstrate a violation of the Sixth Amendment and that a trial court, unless it knows or reasonably should know that a particular conflict exists, is not required to initiate an inquiry into the propriety of multiple representation if no party lodges an objection. 446 U.S. at 347-48. The Court concluded that a convicted criminal defendant is not entitled to federal habeas corpus relief based on a violation of the Sixth Amendment right to effective representation upon a showing of multiple representation which involves a possibility of conflict of interest, since the mere possibility of such a conflict is insufficient to impugn a criminal conviction. 446 U.S. at 350.

In *State v. Jenkins*, 257 Kan. 1074, 898 P.2d 1121 (1995), this court discussed dual representation by an attorney. Jenkins appealed his jury conviction for sale of cocaine. Jenkins' court-appointed attorney also represented the key witness against Jenkins on unrelated charges. The trial court had been informed of the dual representation. On appeal, Jenkins argued that he was denied the effective assistance of counsel at trial due to the conflict created by the dual representation. The *Jenkins* court discussed *Holloway*, 435 U.S. 475, and *Cuyler*, 446 U.S. 335. Reconciling *Holloway* and *Cuyler*, the *Jenkins* court stated that when a possible conflict exists but the trial court is not advised of the possibility, the limited presumption set forth in *Cuyler* applies and the defendant, in order to establish a violation of his Sixth Amendment right to the effective

assistance of counsel, must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. See *Cuyler*, 446 U.S. at 348. On the other hand, *Holloway* requires that where the trial court is advised of the possibility of a conflict by either the defendant or the State, the court is required to initiate an inquiry to insure that the defendant's Sixth Amendment right to counsel is not violated. If the trial court fails to inquire, a showing that there is an actual conflict of interest results in automatic reversal without a need to show that the conflict adversely affected counsel's performance. See *Holloway*, 435 U.S. at 489.

The *Jenkins* court concluded that even though the defendant had not objected to the representation at trial, the trial court was aware that an actual conflict existed and therefore *Holloway* required automatic reversal. 257 Kan. at 1086-87. The court noted that reversal would also be required under *Cuyler* because the record showed that the conflict adversely affected counsel's cross-examination of the witness he represented. 257 Kan. at 1087-88.

*Beets v. Scott*, 65 F.3d 1258 (5th Cir. 1995), was decided 5 months after *Jenkins*. After Beets' conviction for the capital murder of her husband was affirmed by the Texas Court of Criminal Appeals, she sought habeas corpus relief, claiming ineffective assistance of counsel based on her counsel's son taking assignment of media rights and her counsel's failing to withdraw as trial counsel and testify for her. The United States District Court for the Eastern District of Texas granted relief, and the prosecution appealed.

The Fifth Circuit Court of Appeals noted that in most Sixth Amendment ineffectiveness cases, the defendant must show that counsel's errors fell below an objective standard of reasonableness and prejudiced his or her case, which usually means establishing a reasonable probability that counsel's errors changed the result of the proceedings, *i.e.*, the *Strickland* test determining ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1983). It observed that in some cases, prejudice is presumed if the defendant shows that an actual conflict of interest adversely affected counsel's performance. 65 F.3d at 1265. In its analysis, the court noted that the Sixth Amendment assures defendants of legal counsel whose reasonably effec-

tive assistance permits a fair trial. 65 F.3d at 1268. The court stated that the purpose of Sixth Amendment is not primarily to police attorneys' ethical standards and create a constitutional code of professional conduct but, rather, is to assure a fair trial based on competent representation. 65 F.3d at 1272. Not every potential conflict, even in multiple representation cases, is an actual conflict for Sixth Amendment purposes. 65 F.3d at 1268. The court concluded that counsel owes his or her client a duty to avoid conflict of interest, but that is just one of many duties, including advocating the client's cause, consulting with the client and keeping him or her informed, and employing skill and knowledge on the client's behalf. 65 F.3d at 1272.

The United States Court of Appeals held that: (1) the *Strickland* test of effective assistance of counsel, rather than the *Cuyler* test, offers the superior framework for addressing conflicts outside the multiple or serial client context; (2) attorneys should not enter into literary and media rights fee arrangements with clients during the pendency of the representation; (3) the defendant was not prejudiced by the fact that the attorney's son was given media rights by the defendant as payment of attorney fees; and (4) the attorney's failure to withdraw and testify for the defendant was not professionally unreasonable and did not prejudice the defendant. 65 F.3d at 1272-77. The United States Court of Appeals found that Beets had not established that she was deprived of constitutionally effective counsel and reversed the district court's grant of habeas corpus.

None of these cases discussed have the same factual context as the case at bar. Here, a defense attorney was acting as a temporary prosecutor in the court in which he was defending his client.

It is the duty of the county attorney to appear in any court having jurisdiction within the county and prosecute or defend on behalf of the people all actions and proceedings, civil or criminal, in which the state or the county is a party or an interested party. K.S.A. 19-702(a). The legislature recognized that in certain situations the county attorney will be unable to perform his or her statutory duties and appointment of temporary county attorneys is necessary. In the absence, sickness, or disability of the county attorney and

his or her deputies, any court before which it is the county attorney's duty to appear may appoint an attorney to act as temporary county attorney. K.S.A. 19-711. When a vacancy occurs in the office of county attorney, the district judges of the judicial district in which the county is located appoint a person to serve as temporary county attorney until a person is appointed and qualifies to fill the vacancy under K.S.A. 19-715(a). A temporary county attorney so appointed has the same powers and duties and is subject to the same qualifications as an elected county attorney. K.S.A. 19-715 (b), (c). If Ward was the elected county attorney of Bourbon County or was appointed and qualified to fill the vacancy under K.S.A. 19-715(a), he could not represent clients charged with violations of state criminal statutes in that county.

As provided by statute, Ward was appointed by the district court to serve as acting county attorney in specific cases in which the Bourbon County prosecutor had a conflict of interest and to serve as a temporary county attorney after the death of the county attorney. The district judge was aware of Ward's capacity as a special prosecutor while defending an individual charged with a criminal offense. Ward was not a "part-time" county attorney working under the supervision and control of the county attorney when appointed as a temporary county attorney by the district judge. When enacting K.S.A. 19-711 and 19-715(b), the legislature did not intend that an attorney appointed as temporary county attorney would be prohibited from practicing law in the district court while fulfilling the temporary position.

The assistance of counsel is a constitutional right so basic to a fair trial that its denial can never be treated as harmless error. A trial judge has an independent duty to ensure that a criminal defendant receives a trial that is fair and does not contravene the defendant's Sixth Amendment right to effective assistance of counsel. *Jenkins*, 257 Kan. 1074, Syl. ¶¶ 1, 2. To set aside a guilty plea because ineffective assistance of counsel has rendered the plea involuntary, a defendant must show that there is a reasonable probability that but for counsel's errors he or she would have insisted on going to trial. *State v. Solomon*, 257 Kan. 212, 223, 891 P.2d

407 (1995); see *Hill v. Lockhart*, 474 U.S. 52, 58-59, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985).

Wallace stated that he felt confident about going to trial before the plea because there was no evidence against him. We note, however, that Wallace intended to rely on an alibi defense at trial. Shortly before trial, Wallace's alibi witness refused to testify as to the alibi. In addition, Wallace was aware of evidence from a co-defendant placing Wallace at the scene of the murder and stating that Wallace was the one who did the shooting. Wallace claimed he felt he could justify pleading guilty to the two 10- to 20-year plea bargained sentences because he had been committing other crimes at that time. As discussed previously, the evidence did not show that Wallace was promised two 10- to 20-year sentences. Wallace testified, "I've had a lot of time to think about this, and regardless of whether I could justify two 10 to 20s or not, I would like to have my chance in court to prove that I didn't shoot this man." This shows that Wallace had a change of heart after he entered his plea, but it does not show that there is a reasonable probability that but for Ward's conflict of interest Wallace would have insisted on going to trial. The trial court did not abuse its discretion in finding no manifest injustice requiring withdrawal of Wallace's plea due to ineffective assistance of counsel.

The fact that an attorney has been appointed by the district judge as acting and temporary county attorney while defending an individual charged with committing a crime is not a violation of the defendant's constitutional right to the effective assistance of counsel and does not constitute a manifest injustice which requires withdrawal of defendant's plea. The trial court specifically found that Ward's status as a special prosecutor did not affect his defense of Wallace. Wallace's own testimony is not to the contrary. Under the facts, there was no conflict of interest created by Ward's capacity as a special prosecutor, and Ward's assistance as Wallace's trial counsel was not ineffective. The trial court did not abuse its discretion in determining that there was no manifest injustice requiring withdrawal of Wallace's plea.

Affirmed.