NOT DESIGNATED FOR PUBLICATION

No. 113,407

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RaShawn Anderson,
*Appellant*,

v.

State of Kansas,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; Evelyn Z. Wilson, judge. Opinion filed May 20, 2016. Affirmed.

*Luanne Leeds*, of Leeds Law, LLC, of Topeka, for appellant.

*Jodi Litfin* and *Kyle Edelman*, assistant district attorneys, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ARNOLD-BURGER, J., and BURGESS, S.J.

*Per Curiam:* RaShawn Anderson pled no contest to a charge of first-degree premeditated murder in the Shawnee County District Court. Prior to his sentencing, he sought to withdraw his plea claiming it was not knowingly and understandingly made and that his counsel was ineffective in representing him during his plea. The district court denied his motion, and the Kansas Supreme Court affirmed both his conviction and the denial of his motion to withdraw his plea. Anderson then filed a K.S.A. 60-1507 motion, claiming, among other things, that his counsel was ineffective during plea negotiations

1

and during the taking of his plea. The district court denied his motion, and Anderson now appeals. For the reasons stated below, we affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

Our Supreme Court recited the initial facts of this case in Anderson's direct appeal, *State v. Anderson*, 291 Kan. 849, 850-55, 249 P.3d 425 (2011):

"A grand jury indicted Anderson of first-degree premeditated murder and criminal possession of a firearm for the July 18, 2005, killing of McCoy Caraway in Shawnee County. While this prosecution was pending, a jury convicted Anderson of second-degree murder and aggravated battery in Douglas County for an unrelated matter. Anderson was sentenced to a total of 187 months' imprisonment (15 years, 7 months) for the Douglas County convictions, which Anderson is also appealing. See *State v. Anderson*, No. 99,123, [2009 WL 793019 (Kan. App. 2009) (unpublished opinion), *aff'd* 294 Kan. 450, 276 P.3d 200 (2012), *cert. denied* 133 S. Ct. 529 (2012)].

"In the Shawnee County case at issue here, Anderson was represented by Steven Rosel, who negotiated a plea agreement. Under a written agreement signed by Anderson, he pleaded no contest to first-degree murder in exchange for dismissal of the criminal possession of a firearm charge and a joint sentencing recommendation that Anderson's sentence run concurrent to the Douglas County sentence. First-degree murder is an off-grid felony. K.S.A. 21-3401. Anderson's presumptive sentence for this offense required a mandatory minimum of 25 years' imprisonment served before becoming eligible for parole. K.S.A. 22-3717(b)(1). The plea agreement did not recommend a departure sentence.

"At the plea hearing, the Shawnee County District Court explained to Anderson that the agreement recommended a concurrent sentence and the first-degree murder conviction carried a life sentence with a mandatory minimum of 25 years. But the district court did not specifically explain that Anderson's sentence would extend almost 10 years beyond the concurrent Douglas County sentence because the mandatory minimum for first-degree murder carried the longer mandatory sentence (hard 25 life). Anderson

2

testified at the plea hearing that he understood the agreement's provisions and the possible sentence. But immediately before entering his plea, Anderson conferred with his attorney off-record. Then, Rosel indicated Anderson was ready to proceed. Anderson pleaded no contest.

"A few weeks later, but before sentencing, Rosel filed a one sentence motion to withdraw Anderson's plea. No grounds were stated to support withdrawal. Rosel would later testify he did not know Anderson's reasons for wanting to withdraw his plea at the time the motion was filed.

"It is worth noting that Rosel continued to represent Anderson at the first hearing on the motion to withdraw plea. This resulted in Rosel appearing on behalf of Anderson at a hearing in which Anderson and Rosel would discuss whether Rosel sufficiently informed Anderson of his rights before the plea was entered.

"At this first hearing on the motion to withdraw Anderson's plea, none of the discussion occurred under oath. Anderson alleged Rosel told him during the plea negotiations that Anderson could plead no contest to attempted murder and not serve additional time for the first-degree murder conviction. But, Anderson continued, when the written plea agreement was presented those terms had changed. Anderson claimed further that he asked Rosel during the plea hearing why the court had said the presumptive sentence carried a mandatory minimum of 25 years and Rosel told him not to worry about it. Anderson also said he was assured by Rosel that he would only serve the '15-year sentence' he was already serving in the Douglas County case.

"For his part, Rosel admitted that he talked to Anderson and his family about amending the charge to attempted murder. Rosel also said he understood why Anderson believed he would not serve any more time than he had already received in the Douglas County case. Rosel then stated that 'somewhere in there my advice to him was inaccurate, in that he would not receive any more time than fifteen years.' Rosel could not say 'clearly and conclusively' that he did not mislead Anderson.

"In response to Anderson's claim that Rosel privately contradicted the court's explanation of the sentence in the off-record conversation at the plea hearing, the court

3

asked Rosel if that was how he remembered the discussion. The following exchange ensued:

"'Mr. Rosel: I believed—I believe that—I believe that he's accurate. I believe what he's told you. I believe he's accurate. I believe at the time that I misled him in that concurrent, maybe I wasn't clear enough in that concurrent. I knew what concurrent was; fifteen years of it was going to be concurrent.

"'THE COURT: Well, but what he said is that you told him, "You won't get any more time than what you got in Lawrence." That's different from concurrent. I mean you can serve—

"'Mr. Rosel: I believe that I did tell him that.

"'THE COURT: That he would only get fifteen years?

"'Mr. Rosel: That he wouldn't get any more time than in Lawrence, I believe th[o]se were my words, yeah.'

"But after that exchange Rosel questioned his own recollections, saying he really was not certain by stating, 'I mean Mr. Anderson indicates that's what his recollection is; mine is—mine is—I'm not sure. I don't know.'

"Since none of these facts were alleged in the motion to withdraw, the State was unprepared to address them. The court scheduled an evidentiary hearing. The court appointed [James Chappas] to represent Anderson. At that evidentiary hearing, Anderson, his father, his uncle, and Rosel were witnesses.

"Anderson testified he told Rosel during their first meeting that he wanted a jury trial and Rosel agreed with this because he believed the State had a weak case. Anderson also claimed that Rosel did not discuss any of Anderson's possible trial defenses with him during the three or four times they met. Anderson said further that he and Rosel discussed a plea deal 2 or 3 weeks before trial. Later, Anderson continued, Rosel confirmed to him

4

that the State agreed to amend the charges to attempted murder, so the sentence would run concurrently with his sentence in the Douglas County case—meaning Anderson would not serve additional time.

"Anderson also testified that the day he signed the plea agreement he only skimmed it and did not realize he was pleading to first-degree murder rather than the previously discussed attempted murder charge. Anderson said he asked Rosel whether he would receive the agreed to '15-year sentence' and Rosel assured him he would. Regarding the off-record discussion Anderson and Rosel had at the plea hearing, Anderson testified he asked Rosel about the charge and sentence and Rosel told him not to worry about it. Finally, Anderson testified he would have gone to trial if he understood that he would serve additional time for the Shawnee County conviction.

"Anderson's father said his understanding was that Rosel was trying to get the first-degree murder charge lowered to attempted murder, which would reduce Anderson's sentence so he would not serve more than the 15 years, 7 months already ordered in the Douglas County case. The father also said Rosel assured him both before and after the plea hearing that Anderson would not receive additional time, even though the judge stated the plea would carry a presumed life sentence with a mandatory minimum of 25 years. Finally, the father testified he spoke to Rosel after the first hearing on Anderson's motion to withdraw and Rosel said he would not tell the court under oath that he misled Anderson. Anderson's uncle provided similar testimony, saying that Rosel told him the State would amend Anderson's charge so the sentences would run concurrently and Anderson would not serve additional prison time.

"In Rosel's testimony, the State asked him if Anderson understood the plea agreement before he signed it. Rosel testified they read it together. He also recalled that Anderson said he thought he was going to plead to attempted murder, but Rosel told him the State rejected the offer to reduce the charge to attempted murder. Rosel then testified he believed Anderson 'understood the consequences of entering the plea to first-degree premeditated murder.' Rosel further testified he told Anderson before the no contest plea hearing that the plea agreement could result in an additional 10-year prison sentence beyond the Douglas County sentence.

"The only time Rosel was questioned about his prior contradictory comments at the first hearing was when the State asked him what he and Anderson discussed off the record during the plea hearing. Rosel testified Anderson asked whether his sentence would still run concurrent with the sentence in the Douglas County case. Rosel said he told Anderson that was still the recommended sentence pursuant to the plea agreement. Rosel also said he believed Anderson changed his mind about the plea when Anderson's family intervened. Finally, Rosel testified that he did not mislead, coerce, mistreat, or take advantage of Anderson.

"Both parties submitted written briefs after the evidentiary hearing on whether Anderson should be allowed to withdraw his plea. Relevant to this appeal, Anderson argued good cause was shown because Rosel misled him into believing he would plead to an amended charge of attempted murder and that he would receive a sentence concurrent to the '15-year sentence' ordered in the Douglas County case. Anderson also claimed the plea was not fairly and understandingly made because Rosel gave him conflicting and misleading advice during the plea hearing, citing his allegations that Rosel told him not to worry about the court's statement that the charge carried a mandatory minimum term of 25 years. The State argued Anderson had not established good cause to withdraw his plea, citing Rosel's testimony at the evidentiary hearing in which he recanted his earlier statements. The State also argued the district court's inquiry at the plea hearing cured any confusion Anderson claimed he had because of his attorney's representations.

"The district court denied Anderson's motion to withdraw his plea, making the following factual findings pertinent to the issue on appeal:

"'11. The evidence indicates Rosel may have been less than candid with Anderson's father, mother, and uncle. However, none of those people were Rosel's clients.

"'12. The evidence does indicate Rosel did keep Anderson apprised of the ongoing plea negotiations and that Anderson understood them. To the extent Anderson now claims he did not understand the terms of the written plea agreement, or that he did not assent to those

6

terms, such claims are rejected by the Court as unreliable, and therefore, false.

        . . . .

        "'14. Initially, there was some concern in the Court's mind that Rosel contradicted the Court's statements for conviction of Murder in the First Degree. However, Rosel testified at the hearing on December 2, 2008, that he did not contradict the Court at the plea hearing and that Anderson had been advised of the possible sentence before the plea hearing. Finally, Rosel testified that his own statements to Anderson concerning the possible sentence were consistent with the statements made by the Court to Anderson at the Plea hearing. The Court is satisfied that Anderson understood the potential sentence for Murder in the First Degree, the crime of conviction in this case, before Anderson's plea of "No Contest" was accepted by the Court.'

        "The district court then held Anderson failed to establish good cause to withdraw his plea because: (1) Rosel was competent, and there was no credible evidence that his performance in representing Anderson fell below an objective standard of reasonableness; (2) the plea agreement benefitted Anderson because it reduced his mandated sentences he would have received for both convictions from over 40 years to 25 years; (3) Anderson was not misled, coerced, mistreated or taken advantage of; (4) the plea was fairly and understandingly made; and (5) Anderson was aware of the consequences of the plea."

Anderson appealed the denial of his motion to withdraw his plea directly to the Kansas Supreme Court. His appeal contained three main contentions: (1) trial counsel failed to explain what was meant for the sentence in this case to run concurrent to the Douglas County sentence which resulted in misleading advice and Anderson not entering his plea understandingly, (2) trial counsel was incompetent in light of Anderson's family's testimony that trial counsel told them the State had reduced the charges against Anderson to attempted murder and Anderson would not serve any additional time, and (3) Anderson's young age and limited education made him dependent upon trial counsel to

7

accurately advise him about the ramifications of entering into the plea agreement and that the district court's inquiry and explanation did not remedy Anderson's confusion because trial counsel told Anderson not to worry immediately before Anderson entered his plea. 291 Kan. at 856-57. The Kansas Supreme Court rejected Anderson's arguments on appeal, holding that the district court did not abuse its discretion in denying Anderson's motion to withdraw his plea because its credibility assessment between Anderson and his trial counsel was supported by evidence. 291 Kan. at 858.

Anderson submitted a timely K.S.A. 60-1507 motion on March 22, 2012. After incorporating two subsequent supplements, Anderson's motion argued that his trial counsel's representation in 2008 was incompetent during plea negotiations. Anderson also argued that the district court would have granted his motion to withdraw his plea if information pertaining to other cases in which his trial counsel was accused of ineffective assistance of counsel and his trial counsel's subsequent disbarment in 2012 had been known. The district court summarily dismissed Anderson's motion as successive to the competency of his trial counsel's advice during plea negotiations and meritless as to Anderson's other arguments.

Anderson timely appeals.

DID THE DISTRICT COURT ERR WHEN IT SUMMARILY DENIED
ANDERSON'S K.S.A. 60-1507 MOTION?

Anderson argues the district court erred in summarily dismissing his K.S.A. 60-1507 motion as successive. Specifically, he contends that evidence of the subsequent disbarment of his trial counsel would have affected the district court's original determination that his trial counsel was more credible than Anderson when deciding whether to allow Anderson to withdraw his plea. This, therefore, means that trial counsel's subsequent disbarment was newly discovered evidence that prevented Anderson

8

from reasonably being able to raise all of the trial errors in the first post-conviction proceeding. Additionally, Anderson contends that his appellate counsel was ineffective in unsuccessfully arguing that his trial counsel was ineffective.

A district court has three options when considering a 60-1507 motion:

"'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

Our standard of review depends upon which of these options a district court uses. When the district court summarily denies a 60-1507 motion, we conduct a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. 300 Kan. at 881.

In a K.S.A. 60-1507 proceeding, the sentencing court is not "required to entertain a second or successive motion for similar relief on behalf of the same prisoner." K.S.A. 60-1507(c); see *State v. Trotter*, 296 Kan. 898, 904, 295 P.3d 1039 (2013). "A movant in a K.S.A. 60-1507 motion is presumed to have listed all grounds for relief, and a subsequent motion need not be considered in the absence of a showing of circumstances justifying the original failure to list a ground." 296 Kan. 898, Syl. ¶ 2; see also Supreme Court Rule 183(d) (2015 Kan. Ct. R. Annot. 272) ("A sentencing court may not consider a second or successive motion for relief by the same movant when: [1] the ground for relief was determined adversely to the movant on a prior motion; [2] the prior

9

determination was on the merits; and [3] justice would not be served by reaching the merits of the subsequent motion.").

> "Absent a showing of exceptional circumstances, the court can dismiss a second or successive [K.S.A. 60-1507] motion as an abuse of remedy. [Citation omitted.]

> """Exceptional circumstances are unusual events or intervening changes in the law which prevent a movant from reasonably being able to raise all of the trial errors in [a K.S.A. 60-1507] proceeding." [Citations omitted.]'" *State v. Kelly*, 291 Kan. 868, 872, 248 P.3d 1282 (2011).

Anderson's 60-1507 motion before the district court argues his trial counsel was ineffective during plea negotiations because he was paid a flat fee, filed no substantive pretrial motions, spent insufficient time meeting with Anderson, communicated poorly or inaccurately with Anderson's family, did not investigate or discuss defenses with Anderson, and misled Anderson on the nature and consequences of his plea agreement. These are the same reasons stated by Anderson in support of his motion to withdraw his plea. The district court determined Anderson's trial counsel was not ineffective and denied Anderson's motion to withdraw his plea; our Supreme Court affirmed. The standards applied for an ineffective assistance of counsel claim and a motion to withdraw a plea due to counsel's errors are practically identical. See *State v. White*, 289 Kan. 279, 285, 211 P.3d 805 (2009) (quoting *State v. Shears*, 260 Kan. 823, 830, 925 P.2d 1136 [1996]). Thus, the question of whether Anderson's trial counsel was ineffective had already been determined on the merits through the denial of Anderson's motion to withdraw his plea. Anderson cannot now seek to have this question reanalyzed through his 60-1507 motion absent a showing of exceptional circumstances.

On appeal, Anderson argues that the district court disregarded two exceptional circumstances that should have allowed him to move forward with his 60-1507 motion: (1) Anderson brings newly discovered evidence in the form of his trial counsel's

subsequent disbarment that would have affected the district court's original finding that trial counsel's testimony was more credible than Anderson's and (2) Anderson's appellate counsel was ineffective when arguing Anderson's direct appeal before the Kansas Supreme Court.

Anderson first argues that he can present newly discovered evidence in order to discredit his trial counsel's testimony. Specifically, Anderson refers to a variety of complaints—including ineffective assistance of counsel during plea negotiations, misconduct, and conflict of interest—filed with the Disciplinary Administrator against his trial counsel which resulted in the surrender of counsel's license and disbarment in 2014. When an attorney's conduct violates the disciplinary rules contained in the Kansas Rules of Professional Conduct, it does not constitute ineffective counsel as a matter of law but is instead a factor to be considered as part of the totality of the circumstances. *State v. Wallace*, 258 Kan. 639, 646, 908 P.2d 1267 (1995).

In rejecting Anderson's motion to withdraw his plea, the district court found that trial counsel had kept Anderson apprised of the ongoing plea negotiations and that Anderson understood them. Further, to the extent that Anderson now claims he did not understand the terms of the written plea agreement or that he did not assent to those terms, the district court rejected such claims as unreliable and false. Last, the district court found that, while it initially had some concern that trial counsel had contradicted the court's statements, the district court ultimately decided, based in part on trial counsel's testimony while under oath at the December 2, 2008, hearing, that trial counsel did not contradict the court's statements to Anderson about the possible sentence that could result from the plea.

When considering a K.S.A. 60-1507 motion alleging newly discovered evidence, another panel of this court explained that "the key . . . inquiry is whether the [evidence is] credible and of such materiality that there is a reasonable probability [it] would produce a

11

different result." *Williams v. State*, No. 109,228, 2014 WL 1362994, at *4 (Kan. App. 2014) (unpublished opinion) (citing *State v. Rojas-Marceleno*, 295 Kan. 525, 540, 285 P.3d 361 [2012]). In essence, Anderson argues that the proffered evidence would have tipped the scales because the district court's conclusion on this point turned on its confidence in trial counsel's general credibility. However, the district court's determination also rested on its conclusion that Anderson's testimony was unreliable, and the newly proffered evidence does nothing to affect that conclusion.

Finally, the new evidence does not present facts at odds with trial counsel's testimony concerning what occurred during the plea hearing and only serves to impeach trial counsel's credibility as a witness. A movant is generally not entitled to an evidentiary hearing "when the newly proffered evidence merely tends to impeach or discredit the testimony of a witness." *Rojas-Marceleno*, 295 Kan. at 540.

Anderson did not meet his burden of establishing that the evidence was credible and of such materiality that there was a reasonable probability that it would produce a different result. The district court correctly determined that this new evidence was not an exceptional circumstance allowing Anderson to argue for a second time that trial counsel's performance during plea negotiations was ineffective.

Anderson's next contention is that his appellate counsel was ineffective in his handling of his direct appeal, making this an exceptional circumstance to justify consideration of his 60-1507 motion on the merits. Anderson is correct that ineffective assistance of appellate counsel can create an exceptional circumstance in a K.S.A. 60-1507 motion. See *Rowland v. State*, 289 Kan. 1076, 1087, 219 P.3d 1212 (2009). However, Anderson did not include this argument in his motion, and an argument not made before the district court is waived on appeal. See *Robertson v. State*, 288 Kan. 217, 227, 201 P.3d 691 (2009).

12

Because Anderson cannot identify exceptional circumstances allowing him to circumvent the limitations of the successiveness doctrine, the district court did not err in summarily denying his K.S.A. 60-1507 motion as successive.

Affirmed.