NOT DESIGNATED FOR PUBLICATION

No. 126,902

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DESIDEREO MENDOZA,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Submitted without oral argument. Opinion filed March 14, 2025. Affirmed.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Njeri Mwangi*, deputy district attorney, *Mark A. Dupree Sr.*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., SCHROEDER and ISHERWOOD, JJ.

PER CURIAM: Desidereo Mendoza pleaded no contest to a single count each of rape and aggravated criminal sodomy for acts perpetrated against his victim. He later filed a motion to withdraw those pleas on the grounds his attorney failed to provide competent representation during the plea process. The district court denied Mendoza's motion after an evidentiary hearing, and he has appealed.

A defendant claiming that they should be allowed to withdraw a plea because their attorney was ineffective is required to satisfy a two-part test—first, that the attorney's

1

performance fell below what is considered reasonable, and second, that but for the attorney's poor performance, the defendant would not have entered the plea and would have insisted on going to trial instead.

The district court found, based on the totality of the evidence, that Mendoza failed to satisfy either step of the two-part test, and we are satisfied there is substantial competent evidence to support that conclusion. We therefore find no error in the district court's denial of Mendoza's motion to withdraw his pleas.

FACTUAL AND PROCEDURAL BACKGROUND

Mendoza was charged with two counts of aggravated indecent liberties with a child; one count each of aggravated criminal sodomy and rape or, in the alternative aggravated indecent liberties with a child; and four counts of aggravated indecent liberties with a child, after subjecting his victim to sexual abuse for several years between September 2013 and September 2016. Counsel was appointed to represent him and because Mendoza spoke only Spanish, he was also assisted by a sworn interpreter throughout all court proceedings.

Mendoza initially stated he wanted to go to trial unless the State could offer him probation in a plea agreement. Mendoza's decision was informed by what his counsel characterized as "extensive conversations with [her] client about the ramifications of any sentence if he was found guilty of even just a couple of the counts." Accordingly, his case was scheduled for a jury trial.

Mendoza ultimately decided to forego a jury trial and plead to reduced charges instead. The plea agreement was drafted in both English and Spanish. Defense counsel, with the assistance of Mendoza's sworn interpreter, read the agreement to Mendoza and he signed it afterwards. At the outset of the plea hearing, in response to the district court's

2

inquiry, Mendoza assured the court he understood what he was charged with and what offenses he was pleading to. The district court then explained the rights Mendoza was waiving and ensured he understood the same, which was followed by the State's reading of the contents of the parties' agreement into the record. The State made clear that under its terms, Mendoza would plead no contest to one count of aggravated criminal sodomy, a severity level 1 felony in violation of K.S.A. 2015 Supp. 21-5504(b)(3)(A), and one count of rape, a severity level 1 felony in violation of K.S.A. 2015 Supp. 21-5503(a)(1)(A), in exchange for the State's dismissal of the remaining charges. The State informed the district court that it intended to request consecutive aggravated sentences, but Mendoza remained free to pursue a lesser sentence or probation at sentencing.

The district court inquired whether the State's recitation of the plea agreement's details was consistent with Mendoza's understanding of the agreement, and Mendoza provided an affirmative response, coupled with the assurance that he had sufficient time to consider the plea agreement and did not have any remaining questions about its terms. Mendoza also stated that he understood the district court could either accept or reject the parties' recommendations and that he was not promised anything in exchange for his willingness to enter a plea.

Mendoza acknowledged that he and his attorney had discussed the potential sentences Mendoza faced. Despite these guarantees, however, some confusion developed with respect to his maximum possible sentence. The written agreement indicated that the maximum sentence Mendoza could receive was "165 x 2 (230) months imprisonment."

The district court then explained to Mendoza that the actual maximum sentence for his presumed criminal history score of I, and its corresponding sentencing range of 147 to 165 months for each of Mendoza's two offenses, was 330 months. It went on to clarify that given there were two crimes, the court "could run those back-to-back, or consecutive, where the most the Court could sentence you . . . would be . . . 330 months."

3

When the district court inquired whether Mendoza understood those sentences, he assured the court that he did. The judge specifically asked Mendoza whether he had "any questions . . . about what the potential maximum sentence could be," and Mendoza responded that he did not.

The district court requested that defense counsel correct the written plea agreement to reflect the specific sentencing numbers the court covered in its conversation with Mendoza and asked that Mendoza then initial the same as acknowledgment of his understanding. The district court also directed counsel to modify the erroneous 36 months' postrelease supervision term to reflect the statutorily mandated term of lifetime postrelease supervision.

Mendoza entered no-contest pleas to both offenses, and at sentencing the district court imposed a prison term of 155 months for each count. The convictions were ordered to run consecutive for a controlling sentence of 310 months.

Mendoza subsequently filed a pro se motion pursuant to K.S.A. 60-1507 alleging that he was entitled to withdraw his pleas because his appointed counsel rendered deficient representation during the plea process. His motion contained four specific claims in support of his request:

(1)     Defense counsel erroneously told Mendoza the maximum sentence he could receive was 230 months rather than 310 months, therefore he was misled at the time he entered his no-contest pleas.

(2)     Mendoza believed the terms of the plea agreement contemplated his pleas to two counts of aggravated criminal sodomy. Counsel failed to adequately explain the precise offenses covered by the plea agreement were aggravated

4

criminal sodomy and rape and, as a result, the pleas were not understandingly made.

(3)    Defense counsel neglected to object to the State's failure to present sufficient evidence to support the charge of rape or pursue a motion to withdraw his pleas on those grounds after Mendoza's sentence was imposed.

(4)    Defense counsel failed to meet with him prior to sentencing to discuss withdrawing his pleas on the grounds that Mendoza was under the impression his potential maximum sentence was only 230 months.

Mendoza asserted that if counsel had informed him of the proper maximum sentence, he would have insisted on going to trial to prove the falsity of the State's charges against him rather than enter the pleas.

The district court conducted an evidentiary hearing to address each of Mendoza's claims. Mendoza was the sole witness called to testify and informed the district court that he was not happy with the representation he received from his appointed counsel. He claimed that counsel only met with him on two occasions and essentially never told him anything about his case. According to Mendoza, the first time he met his attorney he explained that he did not understand the charges against him, and she simply responded that Mendoza needed to plead guilty if he wanted counsel to help secure his release. Mendoza replied that he would not plead guilty to something he did not do. The second time they met, counsel purportedly told Mendoza to sign the plea agreement despite the fact it had neither been read nor explained to him. Mendoza testified that the agreement was in English only, and his attorney did not provide him with a Spanish version, but that doing so would not have been helpful because he struggles to read Spanish on his own.

5

Mendoza repeated his claim that counsel failed to clarify the exact crimes contemplated by the plea agreement or advise Mendoza that he could potentially receive a 330-month sentence and explain how many years that meant he would spend in prison. Instead, Mendoza believed probation was a possibility and thought that if the district court opted to impose a prison sentence it could not exceed 230 months. Mendoza acknowledged that he understood some of the district court's admonishments during the plea hearing, but he failed to comprehend that a 330-month prison term was possible.

The district court took the matter under advisement and ultimately entered a written order denying Mendoza's motion. It recognized that Mendoza's attorney initially erroneously advised him of the maximum possible sentence, due to her arithmetical error, but concluded that it was harmless because Mendoza was properly informed during his colloquy with the judge, and he assured the court that he understood the maximum possible sentence he could receive. The district court held that Mendoza failed to satisfy either prong of the ineffective assistance of counsel inquiry, thus manifest injustice would not result if his pleas remained intact. Specifically, it determined that Mendoza's appointed counsel provided competent representation and there was no indication that Mendoza would have otherwise opted to go to trial, thus the prejudice prong of the test was also not satisfied.

Mendoza now brings his case before this court to determine whether the district court erred in denying his motion to withdraw his no-contest pleas.

LEGAL ANALYSIS

*The district court did not abuse its discretion when it found no manifest injustice existed to warrant withdrawal of Mendoza's no-contest pleas.*

On appeal, a case of this nature necessitates that we employ two standards of review. First, we review the district court's denial of Mendoza's motion to withdraw his

plea for abuse of discretion. See *State v. Green*, 283 Kan. 531, 545, 153 P.3d 1216 (2007). A district court abuses its discretion if its decision arises out of a factual or legal error or when its decision is so unreasonable that no reasonable person would agree with it. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). A person challenging a district court's actions as an abuse of discretion bears the burden to establish that such abuse occurred. See *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018).

Since we are asked to determine whether the district court committed a legal error or acted unreasonably, we must also consider the standards it applied when conducting its analysis. Under K.S.A. 22-3210(d)(2), a plea may be withdrawn after sentencing only when the defendant successfully establishes that manifest injustice will result if their plea is not withdrawn. Manifest injustice has been described as "something obviously unfair or shocking to the conscience." *State v. Terning*, 57 Kan. App. 2d 791, Syl. ¶ 5, 460 P.3d 382 (2020).

A plea may be set aside due to ineffective assistance of counsel if a defendant proves that (1) their attorney's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for the attorney's substandard representation, the defendant would not have pleaded guilty or no contest but instead would have insisted on going to trial. *State v. Adams*, 297 Kan. 665, Syl. ¶¶ 2-3, 304 P.3d 311 (2013). Finally, when determining whether to allow the withdrawal of a plea in this context, the district court should consider (1) whether the defendant was represented by competent counsel, (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) whether the plea was fairly and understandingly made. *State v. Collins*, 319 Kan. 439, 442, 555 P.3d 693 (2024). These three factors are known as the *Edgar* factors, as established in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006); see also *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018) (applying *Edgar* factors to review a ruling on a postsentence motion to withdraw a plea). All of the *Edgar* factors need not apply in a defendant's favor in every case, and

other factors may be duly considered in the district judge's discretionary decision. *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010). A district court's factual findings are reviewed for substantial competent evidence and will be afforded deference. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). Thus, we do not reweigh the evidence or assess witness credibility. 291 Kan. at 855. The court's legal conclusions are reviewed de novo. *State v. Overstreet*, 288 Kan. 1, 24, 200 P.3d 427 (2009).

Before proceeding further, it is important to identify the precise scope of our analysis. As noted above, when Mendoza was before the district court, he asserted that the adequacy of counsel's representation was marred by four specific flaws. Mendoza chose to only carry the first of those four issues forward on appeal—that counsel neglected to advise him of the appropriate maximum prison term he was subject to in entering no-contest pleas to the specified offenses. Accordingly, claims two through four are considered waived or abandoned and will not be included as part of our analysis. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) ("Issues not briefed or not adequately briefed are deemed waived or abandoned.").

In his brief to this court, Mendoza also claimed that counsel provided incompetent representation and misled him about the plea agreement when she told him they could seek probation at sentencing because K.S.A. 21-6815 expressly prohibits such lenient sentences for the crimes of extreme sexual violence that Mendoza was pleading to. But Mendoza did not raise this claim either in his motion or at the evidentiary hearing before the district court. Additionally, he provides no reason for this court to consider the issue for the first time on appeal as is required by Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36). See *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015). Moreover, the single paragraph that he devotes to the issue lacks any legal authority and falls short of adequate briefing for the claim. *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018) (Issues only incidentally mentioned are not preserved for consideration on appeal.). "Simply pressing a point without pertinent authority, or

without showing why it is sound despite a lack of supporting authority or in the face of contrary authority, is akin to failing to brief an issue." *State v. Stuart*, 319 Kan. 633, 639, 556 P.3d 872 (2024) (quoting *State v. Gonzalez*, 307 Kan. 575, 592, 412 P.3d 968 [2018]). Consideration of Mendoza's new sentencing related claim is not properly before this court for review.

Turning to the merits of Mendoza's singular claim, while he requested to withdraw his pleas via a motion filed under K.S.A. 60-1507, rather than as a motion to withdraw a plea under K.S.A. 22-3210, Kansas appellate courts have confirmed that there is no distinction in the appropriate analysis for each type of motion. Therefore, we are free to look to K.S.A. 22-3210 as the framework for our analysis of Mendoza's claim. See *State v. Kelly*, 291 Kan. 563, 566, 244 P.3d 639 (2010) (construing pro se motion under K.S.A. 60-1507 as a motion to withdraw plea under K.S.A. 22-3210).

K.S.A. 22-3210(d)(2) provides: "To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." As previously noted, the claim Mendoza raises requires us to consider the three *Edgar* factors when determining whether Mendoza has successfully established manifest injustice to withdraw his pleas. Defendants are not required to demonstrate that all three factors apply in their favor, and a district court also has the discretion to take other relevant factors into consideration. *Johnson*, 307 Kan. at 443; see also *State v. Moses*, 280 Kan. 939, 950-54, 127 P.3d 330 (2006) (other factors that may support denial of postsentence motion to withdraw plea include: reasonable promptness of motion; defendant's failure to raise issue in prior direct appeal or K.S.A. 60-1507 proceeding; prejudice to the State; a defendant's prior involvement in the criminal justice system; and a defendant's receipt of a favorable plea agreement).

Mendoza notes that counsel erroneously calculated the maximum sentence for his criminal history score of I as 230 months when it truly totaled 330. He argues this error

warrants analysis under each of the three *Edgar* factors, and he contends that if not for this erroneous assertion he would have opted to go to trial.

When a postsentence motion to withdraw a plea alleges counsel provided substandard representation, the constitutional test for ineffective assistance must be met to establish manifest injustice. *State v. Bricker*, 292 Kan. 239, Syl. ¶ 5, 252 P.3d 118 (2011). Claims of ineffective assistance of counsel are analyzed under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the movant must show how counsel's performance was deficient. If successful, the court then "'moves to the second prong and determines whether there is a reasonable probability that, without counsel's unprofessional errors, the result would have been different.'" *Khalil-Alsalaami v. State*, 313 Kan. 472, 485, 486 P.3d 1216 (2021).

During this analysis, there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *State v. Dinkel*, 314 Kan. 146, 148, 495 P.3d 402 (2021) (quoting *Fuller v. State*, 303 Kan. 478, 488, 363 P.3d 373 [2015]). When, as here, the conduct at issue preceded a plea, prejudice means a reasonable probability that, but for the deficient performance, the defendant would have insisted on going to trial rather than entering the plea. *State v. Shears*, 260 Kan. 823, Syl. ¶ 2, 925 P.2d 1136 (1996); *State v. Wallace*, 258 Kan. 639, Syl. ¶ 2, 908 P.2d 1267 (1995).

In arguing that the district court's findings and conclusions were erroneous, Mendoza directs our attention to paragraph nine of the written plea agreement. A portion of that passage is intended to inform the defendant of the maximum sentence he will face as a result of the offenses he enters a plea to. That section contains defense counsel's handwritten equation "165 x 2 (230)" to document the maximum sentence associated

with Mendoza's criminal history score of I in the event the two sentences were aggravated and ordered to be served consecutively. While 165 accurately identifies the aggravated number in the grid boxes corresponding with Mendoza's two sex offenses, 230 reflects counsel's arithmetical error. The true product for that equation is 330 months. Accordingly, at first blush it appears some question exists as to whether Mendoza was provided with accurate information from which to formulate a true understanding of the maximum sentence he faced before deciding whether to enter a plea.

To provide reasonable representation to a defendant during plea negotiations, "defense counsel has an obligation to advise the defendant as to the range of permissible penalties and to discuss the possible choices available to the defendant." *State v. White*, 289 Kan. 279, Syl. ¶ 5, 211 P.3d 805 (2009). Here, the district court determined that counsel's performance was not deficient because her erroneous sentence calculation was corrected by the district court during the plea hearing and counsel explained that correction to Mendoza during the hearing before he entered his plea. The district court also found Mendoza failed to establish that he would have gone to trial instead of entering a plea if his attorney had communicated the maximum possible sentence correctly.

We are unable to conclude that the written plea agreement, standing alone, accurately informed Mendoza of the maximum sentence that pleas to these offenses subjected him to. Although corrected orally, counsel's arithmetical error was not altered in any way so the maximum sentence associated with a criminal history score of I in the written agreement remained 230 instead of 330. No evidence to the contrary was presented because Mendoza's trial counsel was not called to testify at the evidentiary hearing on his motion. Thus, there is no record of what counsel may have orally discussed with Mendoza on this matter. Consequently, we find that, at a minimum, Mendoza successfully rebutted the presumption of reasonable representation.

11

But as we previously noted, Mendoza has the burden to satisfy both steps of the ineffective assistance inquiry—performance *and* prejudice. If trial counsel's written sentencing calculation was rectified and clarified by other sources such that Mendoza was ultimately fully informed of the consequences before he entered his pleas, he cannot meet the prejudice prong.

One avenue by which a defendant may ultimately have received a full explanation of the consequences of their plea would be through the plea colloquy conducted by the district court judge. To ensure that the due process rights of a criminal defendant who enters a plea are scrupulously honored, K.S.A. 22-3210(a)(2) requires a judge who accepts a felony guilty or no-contest plea to inform the defendant of the maximum possible penalties for the crimes to which they plead. If a court fails to meet this requirement, the error can be deemed harmless and the plea need not be set aside if a review of the entire record discloses that the purpose of the statute is otherwise served— if a defendant is advised of the possible sentence in either the written plea agreement, through meetings with defense counsel, or in some other way. *State v. Beauclair*, 281 Kan. 230, 237, 130 P.3d 40 (2006). Similarly, if the written plea agreement or defense counsel fails to advise the defendant of the consequences, a judge's compliance with the requirements of K.S.A. 22-3210(a)(2) can remedy those failures. *White*, 289 Kan. at 287.

Such remedial measures occurred in this case. Here, the district court judge determined that the plea colloquy he engaged in with Mendoza was sufficient to ensure that Mendoza was fully informed on the maximum sentence that could follow from his pleas and cited to the relevant portions of the transcript to substantiate its ruling. The judge first observed that based on the parties' belief that Mendoza was a criminal history score of I, he "explained to [Mendoza] that his sentence for each conviction could be 147 to 165 months" and "could run consecutively for a total of 330 months," to which Mendoza "indicated that he understood." Finally, the court noted that when it inquired whether Mendoza "had any questions about the potential maximum sentence, [Mendoza]

12

said he did not." The judge later verified whether Mendoza had "any questions" about what the court discussed with him and Mendoza responded he did not and assured the court that "everything was fine."

The manifest injustice required to warrant granting Mendoza's postsentencing motion to withdraw his pleas simply is not present here. The record before us reflects that the district court made every effort to satisfy its obligation to advise Mendoza of the maximum possible sentence he would be exposed to by entering no-contest pleas to aggravated criminal sodomy and rape. Once those terms were communicated, the court twice inquired whether Mendoza had an accurate understanding of the consequences he faced. Accordingly, we are satisfied there is substantial competent evidence to support the district court's findings that Mendoza's pleas were not the product of subpar representation and he was not misled or coerced. Rather, his pleas to the two offenses were fairly and understandingly made and there is no indication he would have opted to go to trial had it not been for counsel's calculation error. The district court's denial of Mendoza's motion is affirmed.

Affirmed.