STATE OF KANSAS, *Appellee,* v. LARRY ELDON RICE, *Appellant.*

No. 51,114

STATE OF KANSAS, *Appellee,* v. LARRY ELDON RICE, *Appellant.*

(607 P.2d 489)

Opinion filed March 1, 1980.

*Tom Crossan,* of Crossan & Claus, of Independence, argued the cause and was on the brief for appellant.

*Glenn E. Casebeer, II,* assistant county attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Paul D. Oakleaf,* county attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Two appeals from the district court of Montgomery County have been consolidated in this court.

Appeal No. 51,113 (District Court case No. 78 CR-138 I) is an appeal by Larry Eldon Rice from the sentence imposed after his plea of guilty to one count of aggravated escape from custody (K.S.A. 21-3810).

Appeal No. 51,114 (District Court case No. 78 CR-125 I) is an appeal by Rice from jury convictions of aggravated burglary (K.S.A. 21-3716), aggravated battery (K.S.A. 21-3414), aggravated assault (K.S.A. 21-3410), and rape (K.S.A. 21-3502). One count of aggravated battery and one count of aggravated assault were dismissed as being multiplicitous on motion of the defendant at the end of the evidence.

We will first turn to the appeal in No. 51,114. On June 10, 1978, a sixteen-year-old Independence girl left her home in the early evening to go to a nearby grocery store. As she walked to the store, she noticed a white pickup truck following her. After making purchases and leaving the store, she proceeded across the parking lot toward home and observed the same white truck in the parking lot. She walked past the truck and got a good look at the driver. She returned home and, after watching T.V., went to bed about 10:00 to 10:30 p.m. Near midnight she was awakened by a man in her room who was holding a chemically-treated cloth over her nose and mouth. She struggled with the intruder who wrestled her to the floor, threatened, beat and raped her. The victim testified she did not get a good look at the man due to the darkness of the room but that he was a large man wearing a dark-colored shirt and blue jeans. After he left, the victim ran to the other bedroom to call her mother. While calling she had a clear view, through the window, of the street which was illuminated by a street light. She observed her attacker leave the house and enter

the white pickup truck she had seen earlier in the evening. She recognized the driver as the same person she had seen in the grocery parking lot. After contacting her mother, the victim was taken to a local hospital where police officers questioned her. Upon being shown a photo lineup, she was able to readily identify the defendant Rice as her attacker. Rice was arrested shortly thereafter at about 3:00 a.m. at his home at which time the officers found a doily soaked with some sort of chemical. Later defendant's clothes were found hidden in a load of freshly laundered clothes. The victim's purse, which was missing from her home, was found underneath a porch at Rice's home and two necklaces, which had been in the purse, were found in the yard. At trial defendant asserted an alibi but none of his witnesses could corroborate it. Defendant asserts ten points on appeal.

I.

Appellant's first point is that he was denied the effective assistance of counsel in violation of his constitutional rights. Defendant was represented throughout the proceedings which are pertinent to this appeal by appointed counsel Tom Crossan, an experienced and able member of the bar. In August, 1978, Mr. Crossan was seriously injured in an automobile accident. He was hospitalized in October, 1978, in December, 1978, and again in January, 1979, when he underwent surgery for the removal of two herniated discs. He was released from the hospital on January 19, 1979, and defendant's case was scheduled for trial on January 25, 1979. At that time, Mr. Crossan was not physically able to begin trial and the court granted a continuance until February 27, 1979. On February 27th, the matter proceeded to trial and Mr. Crossan represented the defendant throughout the trial which lasted seven days. Due to Mr. Crossan's recent surgery, he was compelled to use a wheel chair and crutches at times during the trial and numerous recesses were required. Mr. Crossan, with great candor and honesty, now comes before this court and indicates that due to his impaired physical condition, the defendant may not have received effective assistance of counsel. This possibility was also raised on the motion for a new trial which was denied by the trial court.

The standard used in determining whether counsel has been ineffective has been recently stated as:

"The right to effective assistance of counsel presupposes that counsel will be

competent and capable of conducting a genuine defense on behalf of the accused. While the law does not guarantee the assistance of the most brilliant and experienced counsel, it does require honest, loyal, genuine and faithful representation on the part of counsel, be he retained or appointed.

"Conduct of defense counsel which is so dishonest, incompetent or inadequate as to amount in practical effect to no counsel at all clearly violates a defendant's Sixth Amendment right to counsel. However, conduct which amounts to a substantial deviation from that expected of a reasonably competent lawyer in the community, such that no lawyer of average ability would engage in it, and which causes the client's conviction or otherwise works to the client's substantial disadvantage, is also a deprivation of the constitutional guarantee of 'effective' counsel.

"In applying the foregoing standard to counsel's performance, the effective assistance of counsel cannot be equated with the successful assistance of counsel. The adequacy of an attorney's services on behalf of an accused must be gauged by the totality of his representation, not by fragmentary segments analyzed in isolated cells." *Schoonover v. State,* 2 Kan. App. 2d 481, Syl. ¶¶ 2-4, 582 P.2d 292, *rev. denied* 225 Kan. 845 (1978).

See also *State v. Voiles,* 226 Kan. 469, 601 P.2d 1121 (1979); *State v. Schrum,* 226 Kan. 125, 595 P.2d 1127 (1979).

The United States Court of Appeals for the Tenth Circuit has recently adopted a similar standard. In *Dyer v. Crisp,* 613 F.2d 275, 278 (10th Cir.), *cert. denied* March 24, 1980, the court stated the test to be:

"The Sixth Amendment demands that defense counsel exercise the skill, judgment and diligence of a reasonably competent defense attorney."

We have carefully reviewed the record in this case which includes, among other things, a trial transcript of 963 pages, transcripts of numerous pretrial and post-trial proceedings and the pleadings. Following arguments on the motion for a new trial the Hon. Floyd V. Palmer, trial judge, stated:

"No. 1, defendant denied effective assistance of counsel. I have reviewed the file in this case and reviewed the minutes of the trial docket, and they certainly reveal the contrary to me. In the court's opinion, the defendant had as an effective assistance of counsel as this court's ever seen . . . ."

Our review of the record confirms the trial court's opinion. By whatever standard any court might adopt, the defendant in this case has been ably and effectively represented and has no valid complaint whatsoever about the representation furnished by Mr. Crossan. Mr. Crossan is to be commended for his candor in bringing this issue before the trial court and this court but the possibility that defendant was denied effective counsel by reason of Mr. Crossan's physical infirmities at trial is totally and wholly

without merit. Counsel has brought to our attention other incidents that occurred during the trial which he argues may have been the result of ineffective counsel. We have considered the same and conclude the defendant was in no way denied the effective assistance of counsel.

II.

Appellant's next point is that the trial court erred in overruling a motion by Mr. Crossan to be relieved as defense attorney due to a possible conflict of interest and/or possible violation of the Code of Professional Responsibility. Cynthia Claus, an attorney and a partner in Mr. Crossan's law firm, was also judge of the Municipal Court in Independence, Kansas. It is asserted that in her position as judge Mrs. Claus works closely with the police department of the city and that certain members of the city police force were involved in the investigation in this case and actually made the arrest of the defendant. While there is no specific provision in the Code prohibiting representation of defendants in criminal cases by the partners or associates of a judge or prosecutor, this has long been a problem of courts and judges who have the responsibility to appoint counsel for indigent defendants. It is often stated that such representation may give an appearance of impropriety and therefore should be carefully avoided under Canon 9, DR 9-101 (225 Kan. cix). On the other hand, it is the duty of every lawyer to assist the legal profession in fulfilling its duty to make legal counsel available. Thus, in any particular case there is a necessity to balance the conflicting duties and make a determination on an individual case by case basis. It is also generally accepted that a lawyer should not accept representation of any client if the lawyer's partner or associate would be disqualified from accepting the same employment due to a conflict of interest. If there is a conflict of interest between one member of a law firm and a potential client, the Canons would preclude representation by any member of the firm.

In the instant case Mrs. Claus was employed as a part-time municipal judge of the City of Independence. This is generally the case throughout Kansas where local municipal courts exist separate and apart from the district court. It is also quite common for such cities to retain part-time city attorneys to handle the prosecution of criminal cases. Early opinions of the advisory section of the ethics committee of the Kansas Bar Association

have held that a lawyer holding a position as a part-time municipal judge, city attorney or county attorney would be precluded from representing criminal defendants in all courts. See opinions 28, 33 and 39, Handbook on Professional Ethics, Bar Association of the State of Kansas (1965). In a more recent opinion, the committee has advised:

"Lawyers holding part-time positions as Judges or Prosecuting Attorney, should, of course, never appear as counsel for defendants in criminal matters in the Courts in which they have responsibility. It is the opinion of the Committee, however, that they may be far enough removed that they can appear in other Courts, in which they have no substantial responsibility, as counsel for criminal defendants without giving an appearance of impropriety.

"It remains the opinion of the Committee that if a Lawyer is required to decline employment, or withdraw from employment, that none of his Partners or Associates may accept or continue such employment."

The American Bar Association has also spoken to the problem. Formal opinion 55 of the American Bar Association Committee on Professional Ethics and Grievances may be summarized as follows:

"A duty rests on the bar to defend indigent prisoners as a public service when requested by the court. There is no impropriety in the city attorney of a rural community defending indigent prisoners in cases other than those which it is his duty to prosecute. A law partner of the city attorney may properly defend indigent prisoners whom his partner may defend." Handbook on Professional Ethics, p. 56.

It must be conceded that the opinions of both the Kansas Bar Association and American Bar Association appear conflicting at times; however, we believe the more liberal and recent rule to be preferable. Ordinarily, a part-time judge or prosecutor would not be precluded, on a basis of conflict of interest, from representing defendants in criminal cases in other courts. The same is true of the law partners and associates of such public servants. Obviously, none of such persons should represent a defendant in the court in which the judge or part-time city or county attorney carries out his or her duties. Nor should any such lawyer represent a defendant in an appeal from a decision of the inferior court. It might also be pointed out that we see no distinction between appointed and retained counsel when it comes to a determination of a conflict of interest. In the last analysis the decision of whether a conflict of interest is actually present or whether the relationship of the defense attorney to the public servant law

partner or associate might create an appearance of impropriety is one to be determined by the judge and counsel on an individual basis. Lacking any such actual conflict or appearance of impropriety, we do not believe the attorney should be precluded from the representation. In the instant case, the defendant was advised of the relationship of Mr. Crossan and Judge Claus, there was no conflict of interest and we see no appearance of impropriety which would have disqualified Mr. Crossan.

Assuming, for the sake of argument, that a conflict might exist there was no showing of prejudice to the defendant.

"A mere allegation of a conflict of interest of counsel is not sufficient to show a denial of an accused's constitutional right to the effective assistance of counsel." *State v. Gross,* 221 Kan. 98, Syl. ¶ 2, 558 P.2d 665 (1976).

Appellant's second point is without merit.

### III.

Appellant asserts that it was error for the court to refuse to grant a mistrial and dismissal because of alleged prosecutorial misconduct. During the opening statement of the State the prosecutor referred to acts of oral sodomy which the defendant allegedly forced the victim to perform. It appears that during the preliminary hearing which was conducted by different counsel for both the State and the defendant, there was some discussion whether defendant would be charged with oral sodomy. Defendant claims a stipulation was reached that there would be no mention or charge of oral sodomy. The trial court ruled that the exchange by counsel during the preliminary hearing might be considered to rise to the dignity of a stipulation but refused to grant a mistrial. No prejudice has been shown and the trial judge did admonish the jury to disregard the remarks. No error is shown. *State v. Cunningham,* 222 Kan. 704, 567 P.2d 879 (1977); *State v. Hamilton,* 222 Kan. 341, 564 P.2d 536 (1977).

### IV.

One count of aggravated battery and one count of aggravated assault charged in the original information were dismissed by the court at the end of all the evidence as being multiplicitous to other charges against the defendant. Prior to trial and at the commencement of trial, defendant moved to have the charges dismissed. At the end of the evidence the motion was renewed and sustained. Appellant complains, on appeal, that he was prejudiced because these charges were "paraded" by the jury during trial.

" 'Multiplicity' in a criminal pleading is the charging of a single offense in several counts." *State v. Dorsey,* 224 Kan. 152, Syl. ¶ 6, 578 P.2d 261 (1978).

Appellant raises no question on appeal about the charges which were submitted to the jury. In the instant case the charges in the information were such that the court could not have determined in advance whether the charges complained of were the result of a single offense or separate offenses. There was no error in refusing to dismiss the two counts complained of prior to the evidence being presented.

### V.

Appellant next asserts that he was denied a speedy trial in violation of his constitutional rights and K.S.A. 22-3401 and K.S.A. 1979 Supp. 22-3402. The case was originally scheduled for trial in January within 90 days from arraignment as required by statute. The continuance until February was at the request of defendant's counsel, in open court, in the presence of the defendant. Counsel for the defendant states his client was unhappy and did not want or agree to the continuance. No objection by the defendant was made upon the record and as the delay was requested by defendant, it is chargeable to him. K.S.A. 1979 Supp. 22-3402(1).

### VI.

Next, appellant alleges error for failure of the trial court to grant his motion for a new trial. As a basis for a new trial he asserts the cumulative effect of the points raised in I through V. These points have already been found to be without merit. The granting of a new trial rests within the sound discretion of the trial court and absent a showing of abuse, the trial court's decision will not be overturned on appeal. *State v. Bell,* 224 Kan. 105, 577 P.2d 1186 (1978). No abuse of discretion has been shown.

### VII.

It is asserted the trial court lost jurisdiction because defendant was not tried within 90 days as required by K.S.A. 1979 Supp. 22-3402. This is the same point raised in V and is without merit.

### VIII.

Defendant was sentenced under the habitual criminal act to terms of 10 to 40 years for aggravated burglary; 6 to 20 years for aggravated assault; 10 to 40 years for aggravated battery and 10 to 40 years for rape. The first three sentences were to run concur-

rently and the sentence for rape was to run consecutively to the others. It is asserted there was insufficient competent evidence to invoke the habitual criminal act. The trial court took judicial notice of proceedings in the case of *State of Kansas v. Larry Eldon Rice,* No. 77 CR-214 I, in the same district court but tried before a different judge. Robert Schirk, the parole officer in case No. 77 CR-214 I, testified that the parolee in that case was one and the same person as the defendant in this case. Defendant argues that, as Schirk was not present during the trial of the former case, any information Schirk had was hearsay and inadmissible to prove the defendant in this action was the same person as the defendant in the prior case. Defendant had been reporting regularly to Schirk as parolee under the prior case and was adequately identified at the sentencing proceedings.

### IX.

It is next alleged the trial court abused its discretion in ordering the sentence for rape to run consecutively to the other sentences. The sentences were within statutory limits and no abuse of discretion or vindictiveness by the trial court is shown. The sentences will not be disturbed on appeal. *State v. Words,* 226 Kan. 59, 596 P.2d 129 (1979).

### X.

This now brings us to appellant's final point on appeal in No. 51,114 and to the appeal in No. 51,113. Following defendant's arrest on June 11, 1978, he subsequently escaped from custody and upon being apprehended was charged with several felonies. As a result of plea bargaining, he entered a plea of guilty to one count of aggravated escape from custody (K.S.A. 21-3810). Defendant was sentenced in the escape from custody action under the habitual criminal act to 2 to 5 years, with the sentence to run concurrently with the sentences in the rape case. This would result in the sentence in appeal No. 51,113 being served concurrently with the first three sentences as set out in point VIII. However, the trial court in the rape case ordered the sentences in that case to run concurrently with the sentence in the escape from custody case. Defendant argues that as a result it is physically impossible for him to serve the sentences as ordered. It appears obvious to this court that the first three sentences in appeal No. 51,114 and the sentence in No. 51,113 are to run concurrently and the sentence for rape in No. 51,114 is to run consecutively to the

greatest term imposed under those felony convictions in which the sentences are to run concurrently. K.S.A. 1979 Supp. 21-4608. Defendant in case No. 51,113 also asserts that the habitual criminal act was improperly imposed for the same reasons asserted under point VIII in No. 51,114. Defendant was sentenced in both cases at the same time and the same evidence was used to invoke the act in both cases. We have already determined that evidence was sufficient.

Finally, defendant contends the sentence in No. 51,113 is invalid because the original journal entry filed in the trial court did not include a reference to the habitual criminal act statute, K.S.A. 21-4504. The defendant had been advised prior to the sentencing hearing that the act would be invoked. At the hearing the trial judge made it clear the sentences in both cases were being enhanced under the provisions of the act. The original journal entry recited that "the terms and conditions of the Habitual Criminal Act are imposed." Subsequently, an amended journal entry, approved by defense counsel, was filed which included the proper statutory reference. This argument of the appellant is without merit.

One further matter, not raised by either party, which confuses the sentence in No. 51,113 is that both journal entries state that the sentence imposed was "not less than two nor more than ten years," while the transcript of the actual proceedings clearly shows the sentence to be "a term of not less than two years nor more than five years." Defendant's brief refers to the sentence as being two to ten years while the brief of the State indicates two to five years.

"If there should be a variance between the oral pronouncement of sentence and the sentence as set forth in the written judgment, the oral sentence prevails." 2 Wright, Federal Practice and Procedure: Criminal § 534 (1969).

Under these circumstances, the trial court is directed to file an order nunc pro tunc reflecting the correct sentence imposed by the court in district court case No. 78 CR-138 I (No. 51,113). See *Wallace v. Wallace,* 214 Kan. 344, 520 P.2d 1221 (1974); *Aeby v. State,* 199 Kan. 123, 427 P.2d 453 (1967).

The judgments in both appeals are affirmed.