NOT DESIGNATED FOR PUBLICATION

No. 113,663

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CALVIN EUGENE RICHARDS, II,
*Appellant*.

MEMORANDUM OPINION

Appeal from Cherokee District Court; KURTIS I. LOY, judge. Opinion filed July 22, 2016.
Affirmed.

*Caroline Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for
appellee.

Before GREEN, P.J., MCANANY and ATCHESON, JJ.

*Per Curiam*: After Calvin E. Richards, II, pled guilty to manufacture of
methamphetamine, but before his sentencing he filed a motion seeking to withdraw his
plea. After holding an evidentiary hearing the court denied the motion. On appeal,
Richards claims he established good cause to withdraw his plea because: (1) he was not
represented by conflict-free and competent counsel; (2) counsel coerced or misled him
into taking the plea; and (3) the plea was not entered knowingly or voluntarily because he
was confused as to the possible sentence he was facing.

1

After Richards was arrested, he confessed that he had been involved in manufacturing methamphetamine. The State originally charged him with manufacture of methamphetamine, possession of ephedrine or pseudoephedrine, use of or possession with intent to use drug paraphernalia, possession of methamphetamine, and misdemeanor possession of drug paraphernalia. Attorney Robert E. Myers was appointed to represent him. Within weeks, Richards sought to have Myers dismissed and new counsel appointed because of Myers' claimed attitude toward Richards and the case and the claimed conflict of interests that arose from the fact that Myers was the city attorney in Baxter Springs, the city where Richards was arrested. Richards wanted the court to replace Myers with Candace Gayoso, who had represented Richards in the past. Over the next couple of months, Richards repeatedly raised these issues with the court.

At Richards' arraignment, the court took up Richards' pro se motion to dismiss Myers. Richards addressed the court and explained, "nothing against Mr. Myers [but] he's a prosecuting attorney from the town I was arrested in." He wanted Myers replaced with Gayoso, who successfully defended him in another matter. Referring to Gayoso and to the State's recent offer of a plea agreement, Richards stated, "I just feel like . . . Candice could represent me. I mean try to get me some better deal than ten years." The court asked for any comments from Myers, who provided a factual summary of the procedural history of the case, including plea negotiations by the parties. Myers observed:

> "I would point out the comments that he's made to the court about Miss Gayoso; I'm not sure it would be appropriate if she was appointed anyway. Sounds like she may be a witness from the statements that he's made to the court. So I don't see any issues. I haven't filed a motion. I don't think communication is broken down to that point."

The court then asked Richards if he and Myers were still communicating. Richards responded that they were but, apparently referring to the State's plea offer, it was "[j]ust what they want. I mean, it's—it's like I don't have no say. I don't get no chances of

2

anything in this, . . . I'm just going to be sent to prison. That's all they're coming at me with is ten years for [expletive] nothing, for trash." The court persisted in getting Richards to say whether he was able to communicate with Myers. Richards responded, "Evidently not" because Myers is "a prosecuting attorney from the town I was arrested in." Richards persisted that he wanted to be represented by Gayoso because "she's already been through this with me on my last case and knows what kind of . . . a person [the officer assigned to the KBI Drug Task Force] is." At this point the court reminded Richards that he did not get to select his own court-appointed counsel but that the court would select the next person on the appointment list. Richards and Myers then had an off-the-record discussion at counsel table, after which Myers advised the court that Richards would "like to get this set for trial just as soon as we can." The court noted that from observing the 2- to 3-minute exchange between counsel and client, "[i]t appears you're communicating very openly." The court then denied Richards' motion and proceeded with the arraignment.

Richards persisted in expressing his dissatisfaction with Myers' representation. At the pretrial conference and hearing on pretrial motions, the court took up Richards' continued complaints about Myers, which included Richards' claim that "I didn't see him doing anything for me," and his claim that Myers had not helped him get an assessment for impatient drug treatment. Richards also complained that when his house was searched, the officers did not provided him a copy of the warrant.

Myers advised the court of the history of plea negotiations. He told the court that there was an $85 fee for the drug assessment, which Myers arranged to be waived. The drug assessment was completed, but there was no available bed space at the treatment facility and Richards was in custody, which made it difficult for him to get treatment and the necessary aftercare. Myers stated:

3

"The problem that I see is not the issue of counsel or communication. It is he doesn't like what he's hearing. He doesn't like the offer the State's give; which is fine, he can reject it. Which he did. He gives a counter proposal which the State has rejected which is fine, they can do that. That puts us on track to go to trial which we're scheduled to do. You know standing here I'm telling you I've got a job to do and I'm trying to do it. Sometimes people don't like what they're hearing and that's the problem, not necessarily the representation."

The prosecutor then addressed the propriety of the execution of the search warrant and after some additional remarks from Richards on that subject the court overruled Richards' second motion to have Myers discharged, stating:

"Mr. Myers is an experienced attorney and the tactics that he determines are in your best interest in your case are what he will pursue. . . .

. . . .

". . . It is not uncommon in Kansas for attorneys to work as prosecutors in a city or someplace and work as defense attorneys elsewhere. Attorneys are trained and capable of working both sides of the street. Actually it might be to your benefit to have an attorney who also has prosecution experience. Mr. Myers is an experienced and capable attorney. I've tried jury trials with him. When we were in practice together I tried cases against him. He's a good attorney and frankly you're lucky to have him for an attorney. So that motion will be denied."

On the search warrant issue, Myers suggested that it should consider Richards' remarks as a pro se motion to suppress. The court did so, and the State called a witness to testify regarding the search. Myers cross-examined the witness for five pages of testimony and argued on behalf of Richards that although Richards was at home at the time of the search, the officers failed or refused to provide him with a copy of the warrant or permit him to see it. The court denied this motion. Richards then requested that he be released on a personal recognizance bond. The court declined to do so but reduced his bond from

4

$100,000 to $50,000. Myers then requested, and was granted, an order in limine as to any testimony or evidence of Richards' prior bad acts.

A week or so later, Richards filed a pro se motion to produce evidence, noting that his attorney was not doing "anything," so it was up to Richards to do so. He also moved to dismiss the charges against him alleging that the court had denied him his constitutional right to have an attorney because his attorney was inadequate. The court denied both motions.

Shortly before his trial was set to begin, Richards entered into a plea agreement and pled guilty to manufacture of methamphetamine. In exchange, the State agreed to dismiss four other pending charges and to recommend a downward departure sentence of 120 months, 58 months less than the mid-range number in the applicable sentencing grid box. In connection with the plea agreement, Richards signed a "PETITION TO ENTER PLEA AGREEMENT" form in which he acknowledged, among other things, that his plea was made knowingly and voluntarily, and that his "lawyer has done all that anyone could do to counsel and assist me, AND I AM SATISFIED WITH THE ADVICE AND HELP HE HAS GIVEN ME."

About 6 weeks later, and before sentencing, Richards moved to withdraw his plea, claiming that (1) he had been denied his right to counsel of his choosing, (2) he had been tricked into entering a plea, and (3) his constitutional rights had been violated by allowing him to enter a plea.

The court appointed new counsel and held an evidentiary hearing. On his conflict of interests claim, the record does not indicate that any of the State's witnesses were from the Baxter Springs Police Department. Nevertheless, Richards testified that because Myers was the city prosecutor of Baxter Springs, Richards didn't "know how [Myers]

5

thought he was going to defend me over here when I know dang good and well that he doesn't want drugs in his town so he's not going to help me."

On his other claims, Richards testified that he felt tricked and pressured into entering a guilty plea. Notwithstanding what he stated when he entered into the plea agreement and what he told the court at his plea hearing, Richards claimed that he did not understand the plea agreement and what was happening. He claimed he was confused about the length of his sentence.

On cross-examination, Richards admitted that he had been involved in the court system in the past in connection with his many previous criminal charges. Richards had entered into plea agreements before, and he was familiar with how the system worked. Richards admitted that he was properly advised of the recommended sentence in the plea agreement.

Myers testified that the State initially offered a plea deal before the preliminary hearing and its terms were the same as those to which Richards eventually agreed. Myers discussed the terms of the agreement with Richards, who initially rejected the offer. Myers provided Richards with discovery information, and he met with Richards many times to discuss the case and prepare for trial. Myers did not file all of the motions requested by Richards because he considered them frivolous. Myers did not coerce, threaten, or pressure Richards to take the plea offer. He thoroughly reviewed the plea agreement with Richards, who did not indicate any confusion about the proposed deal. Myers was not asked about his role as the prosecutor of Baxter Springs or any potential conflict of interests in representing Richards.

The district court denied Richards' motion, finding Myers the more credible witness. Applying the factors set forth in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), the court concluded that Richards had not shown good cause to withdraw his plea

6

because: (1) he was represented by competent counsel; (2) he was not misled or coerced into entering his plea; and (3) and he entered the plea knowingly and with understanding of its terms and consequences. Consistent with the plea agreement, the court sentenced Richards to 120 months in prison. Richards appealed, raising the issues set forth in the first paragraph of this opinion.

*Analysis*

The standard for allowing a defendant to withdraw a plea before sentencing is "good cause shown." K.S.A. 2015 Supp. 22-3210(d)(1). We examine the district court's denial of Richards' motion for any abuse of judicial discretion. See *State v. Kenney*, 299 Kan. 389, 393, 323 P.3d 1288 (2014). Richards bears the burden of establishing an abuse of discretion. See *State v. Williams*, 290 Kan. 1050, 1053, 236 P.3d 512 (2010). In considering the issue, we do not reweigh the evidence or assess the credibility of the witnesses. We defer to the district court's findings of fact so long as they are supported by substantial competent evidence. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). In reviewing Richards' claim of an abuse of discretion, we consider whether there is substantial competent evidence to support the district court's findings on the three *Edgar* factors. Richards relies on all three, though he is not required to establish all three in order to demonstrate good cause to withdraw his plea. See *State v. Ebaben*, 294 Kan. 807, 812, 281 P.3d 129 (2012).

*First* Edgar *Factor*

Regarding the first *Edgar* factor of competent counsel, Richards asserts that because Myers was a part-time attorney for the City of Baxter Springs he had an irreconcilable conflict of interests. He argues that Myers' duty to prosecute criminals in Baxter Springs conflicted with his duties as a criminal defense attorney. Because part of Myers' job was to prosecute drug crimes committed within the city, Myers would not

7

work hard to represent Richards on charges of drug crimes committed in Baxter Springs, even though the charges were filed in the Cherokee County District Court rather than in municipal court.

The district court is charged with safeguarding a defendant's Sixth Amendment right to counsel. So when a district court becomes aware of a possible conflict of interests between an attorney and a defendant charged with a felony, the court has a duty to inquire further. *State v. Vann*, 280 Kan. 782, 789, 127 P.3d 307 (2006). Here, the district court considered Richards' claim of a conflict of interests and found none.

In *State v. Rice*, 227 Kan. 416, 607 P.2d 489 (1980), defense counsel's law partner was a part-time municipal judge. The defendant argued that a conflict of interests existed because "in her position as judge [the partner] works closely with the police department of the city and that certain members of the police were involved in the investigation in this case and actually made the arrest of the defendant." 227 Kan. at 420. Our Supreme Court held that the determination of whether a conflict of interests exists is to be determined on an individual basis, but it was common throughout Kansas for municipalities to employ part-time judges "where local municipal courts exist separate and apart from the district court." 227 Kan. at 420. Further, it is common for such cities to retain part-time city attorneys to handle prosecutions of criminal cases.

> "Lawyers holding part-time positions as judges or prosecuting attorneys should not appear as counsel for defendants in criminal matters in the courts in which they have responsibility. However, they may be far enough removed that they can appear in other courts, in which they have no substantial responsibility by reason of their governmental employment, as counsel for criminal defendants without giving an appearance of impropriety and without creating a conflict of interest." 227 Kan. 416, Syl. ¶ 4.

The American Bar Association Committee on Professional Ethics and Grievances states that "'[t]here is no impropriety in the city attorney of a rural community defending

indigent prisoners in cases other than those which it is his duty to prosecute.'" 227 Kan. at 421. Thus, the *Rice* court determined that an attorney's part-time employment as a government attorney does not preclude the attorney "on a basis of conflict of interest[s], from representing defendants in criminal cases in other courts." 227 Kan. at 421.

Here, Richards has failed to show that Myers' role as part-time city attorney for Baxter Springs created a conflict in his representation of Richards in this case. Richards was charged in the Cherokee County District Court, not the City of Baxter Springs Municipal Court. Richards does not show that the city attorney prosecuted in municipal court the types of crimes attributable to Richards. Further, the city attorney's concern about drug activity in Baxter Springs would be shared by any attorney living in Baxter Springs. What attorney would not? Under Richards' rationale, no attorney residing in Baxter Springs could represent him, and by a reasonable extension no attorney living in a community where there is a drug problem could represent him either. We reject that notion. See *State v. Gleason*, 277 Kan. 624, 649-52, 88 P.3d 218 (2004); *State v. Wallace*, 258 Kan. 639, 650-51, 908 P.2d 1267 (1995).

Relying on cases from other jurisdictions, Richards would have us overturn our Supreme Court's holdings in *Wallace* and *Rice*. See *Jamison v. Lockhart*, 975 F.2d 1377, 1380 (8th Cir. 1992) (case remanded for district court to explore possibility of possible conflict of interest due to defense counsel's role as city attorney); *People v. Washington*, 111 Ill. App. 3d 711, 714-15, 444 N.E.2d 753 (Ill. App. 1982), *aff'd* 101 Ill. 2d 104, *cert. denied* 469 U.S. 1022 (1984) (finding that because defense counsel served part-time as city prosecutor and the city was significantly involved in the arrest, counsel's professional commitments conflicted with counsel's role as appointed defense counsel in overlapping jurisdictions); *State v. White*, 114 S.W.3d 469, 479 (Tenn. 2003) (concluding that counsel's "dual roles as assistant district attorney general and criminal defense lawyer in the same county created an actual conflict of interest"). Of course, we are bound by the Kansas Supreme Court holdings on this issue absent some indication that the court is

departing from its earlier decisions. *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. ___ (September 14, 2015). We see no such indication.

As an alternative to his claim of an inherent conflict of interests arising from Myers' job as a prosecutor, Richards claims there was an actual conflict of interests arising out of Myers' relationship with local law enforcement personnel. But Richards fails to show an actual conflict arising out of Myers' dealings with the Baxter Springs police. While Richards testified that Baxter Springs' police officers were involved in the execution of the search warrant and his arrest, he did not establish what relationship those officers had with Myers or whether any of those officers were potential witnesses at trial. The three primary officers—those involved in leading the execution of the search warrant, Richards' arrest, and the custodial interrogation—did not work for the City of Baxter Springs.

Richards makes the statement in passing that Myers had a personal conflict "because he had [a] financial motivation to stay on as Mr. Richards' counsel and he advocated to do so." Richards makes no effort to show Myers had a financial motive that dictated his actions over his professional obligation to his client. In terms of a financial motive to hang on to Richards as a client, Myers was no young, wet-behind-the-ears lawyer scrambling to take any case available even at the miserly rate provided for appointed defense counsel. The district court characterized Myers as "an experienced attorney . . . who also has prosecution experience. Mr. Myers is an experienced and capable attorney . . . and frankly you're lucky to have him for an attorney." An issue not briefed is deemed waived and abandoned. *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013). Richards has abandoned this issue.

Next, Richards claims a separate conflict of interests based upon the claim that Myers actively advocating against Richards' position when Richards sought to replace him, much like defense counsel did in *State v. Prado*, 299 Kan. 1251, 329 P.3d 473

(2014). In *Prado*, the defendant originally was charged with aggravated indecent liberties with his 12-year-old daughter, a charge which called for a presumptive life sentence with no chance for parole for 25 years if Prado was convicted. But under a plea agreement, the State agreed to amend the charge to two counts of rape and to recommend a departure sentence of 24½ years rather than the possible life sentence. Pursuant to the agreement, Prado pled no contest to the amended charges, and the court found him guilty. At the sentencing hearing Prado expressed confusion about what he had pled to. His counsel stated:

> "'I think the best way to summarize what Mr. Prado is attempting to say is that it's his position that I did not explain to him the nature of the charges, essentially that I did not communicate to him what it was that he was pleading to, and based on that, he is asking the Court to allow him to withdraw his plea.'" 299 Kan. at 1254.

After a further colloquy between Prado and the court, defense counsel stated:

> "'Mr. Prado . . . is trying to articulate that he did not understand what was going on. We've had extensive discussions. I didn't file a motion to withdraw based on conflict because I didn't see a conflict. . . . [H]e is at least implicating that he has not been counseled, didn't understand what occurred regarding the plea.'" 299 Kan. at 1255.

The district court denied Prado's motion to withdraw his plea and sentenced Prado to the downward departure sentence specified in the plea agreement.

The Kansas Supreme Court declared that a conflict of interests arose when "Prado's attorney argued against the merits of Prado's motion to withdraw his plea." 299 Kan. at 1259. According to our Supreme Court, this conflict denied the defendant his Sixth Amendment right to conflict-free counsel. In doing so, the court recognized a distinction between an attorney truthfully recounting facts and an attorney taking a

11

position adverse to the client and advocating against the client's position. In *Prado*, counsel advocated against the client's interests, thereby creating the conflict.

In *State v. Pfannenstiel*, 302 Kan. 747, 766, 357 P.3d 877 (2015), discussing its holding in *Prado*, the Supreme Court found a meaningful distinction between "(1) an attorney truthfully recounting facts and (2) an attorney going beyond factual statements and advocating against the client's position. [Citation omitted.]" Factual-based evaluative remarks regarding trial strategy normally left to the professional judgment of counsel are appropriate for counsel to make during an inquiry into an alleged attorney-client conflict of interests. 302 Kan. at 767.

In *State v. McGee*, 280 Kan. 890, 126 P.3d 1110 (2006), the defendant sought to have his counsel removed because they were having communication problems and counsel never discussed McGee's side of the case with him. At the hearing on McGee's motion his counsel contradicted the factual allegations supporting McGee's motion. McGee argued on appeal that counsel contradicting McGee's claimed facts created a conflict of interests. The Supreme Court found that in contradicting McGee's claimed facts, counsel did not compromise any confidential information or concede McGee's guilt. Further, counsel's statements did not establish that counsel had any interest that limited his representation of McGee. Thus, the disagreement between counsel and client over the facts did not rise to the level of a conflict of interests. 280 Kan. at 895-96.

Here, when asked whether he could communicate with counsel, Richards first told the court they could communicate but then said "[e]vidently not" because Myers is "a prosecuting attorney from the town I was arrested in." This response was predicated on Myers' professional positon, not the personal interaction between attorney and client.

Myers advised the court that there was no breakdown in communication. This response did not relate to Richards' concern about Myers being a prosecuting attorney in

12

Baxter Springs, but it dealt with actual communications between attorney and client. As such, it did not contradict Richards' assertion or advocate against Richards' interests. Further, Myers' statement that he did not file a motion was merely a statement of fact and did not constitute an argument against Richards' interest. Myers did not go beyond that factual statement and argue that the district court should deny Richards' motion. Finally, in his remarks to the court, Myers did not compromise any confidential information of Richards', nor did he concede Richards' guilt or establish through his remarks that he had any interest that limited his representation of Richards. Thus, any disagreement between Richards and Myers did not rise to the level of a conflict of interests.

Finally, we must not forget that in reviewing the district court's denial of Richards' motion to withdraw his plea the issue we are considering is whether Richards had conflict-free counsel when Richards entered his plea. It is apparent that if there was a conflict between attorney and client early in the case, that conflict had been resolved before Richards entered his plea because on that day Richards executed a "Petition to Enter Plea Agreement" in which he stated, "I believe that my lawyer has done all that anyone could do to counsel and assist me, AND I AM SATISFIED WITH THE ADVICE AND HELP HE HAS GIVEN ME."

Richards fails to show, or even allege, that on the day he entered his guilty plea there existed a conflict of interests between him and his counsel.

As another aspect of the first *Edgar* requirement that the defendant be represented by competent counsel, Richard argues that Myers' representation of him was "merely lackluster." In making this assertion, Richards is not required to show ineffective assistance of counsel rising to the level of a violation of the Sixth Amendment in order to demonstrate good cause for setting aside a plea before sentencing. See *State v. Aguilar*, 290 Kan. 506, Syl. ¶ 1, 231 P.3d 563 (2010).

13

There is substantial evidence to support the district court's finding that Richards was represented by competent counsel. In the face of Richards' laundry list of complaints about Myers' performance, the district court found Myers' testimony on these matters more credible than Richards' testimony. We do not reweigh evidence or reassess witness credibility. *Anderson*, 291 Kan. at 855.

Myers was an experienced attorney who had previous experience in handling severity level 1 felonies. Myers adequately investigated the case and communicated with Richards on many occasions as the trial date approached. Myers appeared and advocated for Richards at all proceedings, filed multiple motions, obtained discovery, successfully negotiated a plea agreement, and worked and communicated with Richards throughout the case. Myers filed a motion to obtain Richards' criminal history report and provided Richards with discovery documents regarding his case. Myers represented Richards at the preliminary hearing and during suppression proceedings.

Many of Richards' complaints were refuted by the record. For example, Richards complained that he was forced to file pro se motions for bond reduction because Myers would not do so. But the record reflects that Myers filed a motion to reduce bond. Richards complained about Myers' lack of effort to get him into a treatment facility, but Myers communicated with the court regarding his efforts to get Richards into drug treatment, showing his efforts in obtaining a waiver of the fee for assessment and in obtaining the assessment for Richards.

Richards was facing five charges with significant prison time. Ultimately, Myers secured a favorable plea agreement for Richards and gave him sufficient time to contemplate the agreement and make his decision to enter the plea. Myers presented Richards with the offer prior to the preliminary hearing and then continued to work on Richards' defense as he contemplated going to trial. As part of the plea, the State agreed to dismiss four charges and argue for a downward durational departure. As noted earlier,

14

in entering into the plea agreement Richards asserted that he was satisfied with Myers' representation: "I believe that my lawyer has done all that anyone could do to counsel and assist me, AND I AM SATISFIED WITH THE ADVICE AND HELP HE HAS GIVEN ME." The record supports the district court's finding that Richards was represented by competent counsel.

Richards fails to demonstrate that he was denied the assistance of competent counsel, which is required under the first *Edgar* factor.

*Second* Edgar *Factor*

Richards asserts that he was misled or coerced into entering a plea. He claims Myers coerced him into accepting the plea agreement by: (1) rushing him into the plea; (2) failing to give him a copy of the plea agreement until 1 hour before the plea hearing; (3) telling him that he would be facing more time if he did not take the plea offer; (4) informing him the judge would be mad at him if he did not quickly accept the plea; and (5) urging him to accept the plea immediately or he would not have the option of a plea later.

Richards had about 2 months to consider the plea agreement. As early as June 5, 2014, counsel noted on the record that "[t]here was an offer that was made that was passed on to the client. You know, obviously whether he makes or accepts a plea or not is up to him." At the July 11, 2015, hearing, counsel again stated on the record that the State made an offer to Richards, which he rejected, and a trial had been set. Later, at the hearing on Richards' motion to withdraw plea, Myers testified that the State made its plea agreement offer before the preliminary hearing was held. He testified that the initial offer was the same as that to which Richards ultimately agreed to on August 1, 2014. Myers testified that he discussed the offer with Richards when it was originally made, and the parties participated in ongoing discussions about a potential plea throughout the

15

pendency of the case. Myers stated that he discussed the agreement with Richards in detail, going over every part of the written agreement. The district court found Myers' testimony credible. The record refutes Richards' claim that he was rushed into the agreement.

Richards' remaining claims were disputed by Myers' testimony. Myers testified that he did not recall telling Richards that the judge would be mad or upset with him. Myers admitted that he told Richards that it was a good offer considering the potential punishment he could face, but this is not the same as coercing or misleading him. Any statements that Richards could face a much greater punishment if he did not accept the plea were true statements. The plea agreement offered a much shorter sentence than Richards would have faced under the sentencing guidelines. The district court found Myers to be the more credible witness, and we do not reweigh evidence or make credibility determinations. *Anderson*, 291 Kan. at 855.

On the day of the plea hearing Richards admitted his plea was freely and voluntarily made. Richards has failed to show that he was misled, coerced, mistreated, or unfairly taken advantage of in entering his plea, as set forth in the second *Edgar* factor.

*Third* Edgar *Factor*

Finally, Richards argues that he did not knowingly and understandingly enter his plea because he misunderstood a statement made by the district court that he was getting "the benefit of 58 months." He claims this statement led him to believe that he was going to be sentenced to 58 months.

Once again, the record shows otherwise. At the first hearing on Richards' motion to remove Myers, he told the court that he wanted Gayoso to represent him because he thought she could get him a better plea deal than the State's 10-year offer.

16

At the beginning of the plea hearing, the district court and the prosecutor made it clear to Richards that the parties would be recommending 120 months, or 10 years. Richards specifically acknowledged that he understood the recommended sentence, and Myers testified at the motion to withdraw plea that he discussed the 120-month sentence with Richards to make sure he understood. The written petition to enter the plea agreement also stated that the parties agreed to recommend a sentence of 120 months in prison. The written agreement informed Richards of the range of possible sentence, from 138 to 204 months in prison.

When the district court informed Richards that he was getting the benefit of 58 months, there is little doubt that Richards understood that the 58 months referred to the reduction in his possible sentence. He had been informed on numerous occasions that the offer was for 120 months in prison.

Finally, when Richards was cross-examined at the hearing on his motion to withdraw his plea, he admitted that he was properly advised of the recommended sentence in the plea agreement.

We are satisfied that Richards understood that he was being sentenced to 120 months, which was a 58-month reduction from the mid-range guidelines sentence. There was substantial evidence to support the district court's finding that Richards' plea was knowingly and understandingly made. Richards fails to satisfy the third *Edgar* factor.

The district court did not err in overruling Richards' motion to withdraw his plea.

Affirmed.